USDC SCAN INDEX SHEET










```
R1R    11/21/05    14:17
3:05-CV-02125    RUIZ V. AFFINITY LOGISTICS
*2*
*RPLY.*
```

BEATIE AND OSBORN LLP
Daniel A. Osborn (CSB No. 132472)
521 Fifth Avenue, 34th Floor
New York, New York 10175
Telephone:   (212) 888-9000
Facsimile:    (212) 888-9664
dosborn@bandolaw.com

LAW OFFICES OF ELIC ANBAR
Elic Anbar (CSB No. 122979)
11770 Bernardo Plaza Court, Suite 453
San Diego, California 92128
Telephone:   (858) 521-1160
Facsimile:    (858) 521-0884
elicanbar@anbarlaw.org

Attorneys for Plaintiff Ruiz and All
Others Similarly Situated

FILED
NOV 21 2005
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

05 CV 2125 R (NLS)

----------------------------------------X
FERNANDO RUIZ, individually and on behalf of all
others similarly situated,

                     Plaintiff,

       v.

AFFINITY LOGISTICS CORPORATION,

                     Defendant.
----------------------------------------X

Civil No. C05-02015 (JSW)

**REPLY MEMORANDUM
OF LAW IN SUPPORT
OF CERTIFICATION OF A
COLLECTIVE ACTION**

Date:  November 18, 2005
Time:  9:00 a.m.
Courtroom:  Hon. Jeffrey S. White

**BY FAX**

Plaintiff Fernando Ruiz submits this reply memorandum of law in support of his motion: (i) for certification of a collective action pursuant to Section 216(b) of the Fair Labor Standards Act, (ii) to require defendant Affinity Logistics Corporation ("Affinity") to produce the last known names, addresses, telephone numbers and e-mail addresses (if known) of all delivery drivers employed by the company since May 18, 2003, and (iii) for permission to send notice to all similarly situated drivers.

---

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF CERTIFICATION

## ARGUMENT

### At the "Notice Stage" of a Collective Action, Plaintiff Need Allege Only That The Class Was Together A Victim of A Single Decision, Policy Or Plan

The FLSA provides that an employee may bring an action against an employer that fails to pay overtime wages on behalf of all "other employees similarly situated." 29 U.S.C. § 216(b); Does v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000). Section 216(b) does not define the term "similarly situated", but the majority of federal courts have adopted a two-stage approach in considering certification motions. See e.g., Thiessen v. GE Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995); Wynn v. National Broadcasting Co., Inc., 234 F. Supp. 2d 1067, 1081 (C.D. Cal. 2002). At the first stage, or the "notice stage", the district court determines only whether a collective action should be certified for purposes of sending notice of the action to potential class members. See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995). At this stage, class members are similarly situated if there are "allegations that the putative class members were together the victims of a single decision, policy, or plan." Thiessen, 267 F.3d at 1102; Aguayo v. Oldenkamp Trucking, Case No. CV F 04-6279, 2005 WL 2436477, *2 (E.D. Cal. Oct. 3, 2005); Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995); Krueger v. New York Telephone Co., 1993 WL 276058 (S.D.N.Y. July 21, 1993); Schwed v. General Electric Co., 159 F.R.D. 373, 375-76 (N.D.N.Y. 1995); Heagney v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988). The standard for certification at the notice stage is a lenient one that typically results in class certification. Mooney, 54 F.3d at 1214; Leuthold v. Destination America, Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004).

At the conclusion of discovery, the party opposing class certification may move to decertify the class and the court will employ a stricter standard. Thiessen, 267 F.3d at 1102-03; Mooney, 267 F.3d at 1103; Leuthold, 224 F.R.D. at 467; Aguayo, 2005 WL at *2. During this "second stage" analysis, the court will review several factors, including: (1) the disparate factual and employment settings of plaintiffs, (2) the various defenses available to defendants that appear to be individual to each plaintiff, and (3) fairness and procedural considerations. Thiessen, 267 F.3d at 1102-03;

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF CERTIFICATION
2

Mooney, 267 F.3d at 1103; Leuthold, 224 F.R.D. at 467; Aguayo, 2005 WL at *2; Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 679 (D. Kan. 2004); see also Def's Br. p. 8.

Affinity does not dispute that virtually no discovery has been conducted, that this case is only at the "notice" stage or that plaintiff is seeking only conditional certification for which this Court should apply a lenient standard that typically results in certification. Def's Br. p. 9; Mooney, 54 F.3d at 1214; Leuthold, 224 F.R.D. at 467. Instead, Affinity argues that plaintiff has not met even his minimal burden at this preliminary stage because, even if drivers should be characterized as employees, plaintiff and Affinity's other delivery drivers are exempt based on the Motor Carrier Act exemption, 29 U.S.C. § 213(b)(1). Affinity also argues that the Court should not certify a class of delivery drivers because they are compensated using different pay scales. Neither of Affinity's arguments are valid justifications for denying plaintiff's motion for *preliminary* certification.

**A.   Affinity's Motor Carrier Act Defense Is Premature On a Motion for Preliminary Certification**

In its opposition brief, Affinity acknowledges that at the second stage, courts will consider the "various defenses available to the defendants with respect to the individual plaintiffs." Def's Br. p. 8. After acknowledging that it is not appropriate for the Court to deny preliminary certification (the issue here) based on individualized issues before plaintiff has been able to marshal all the facts, Affinity argues that the Motor Carrier Act exemption presents individualized issues that must be reviewed for each delivery driver and therefore, certification is improper. This is exactly the type of argument that the courts have repeatedly refused to address at the preliminary certification stage. See e.g., Aguayo, 2005 WL at *2 (holding that defense of Motor Carrier Act exemption was not appropriate determination on motion for preliminary certification); Leuthold, 224 F.R.D. at 467 (declining to address defendants' arguments regarding disparate factual and employment settings of individual plaintiffs and various defenses available to defendants for the individual plaintiffs); Goldman v. RadioShack Corp., Case No. 03-0032, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003) (stating that plaintiff's exempt status is irrelevant for conditional certification at the notice stage); Pendlebury v. Starbucks Coffee Co., Case No. 04-80521, 2005 WL 84500, at *3 (S.D. Fla.

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF CERTIFICATION
3

Jan. 3, 2005) (holding that factual matters regarding the applicability of exemptions to employees is not appropriate at the notice stage).

In the recently decided case of Aguayo v. Oldenkamp Trucking, the Eastern District of California rejected the exact argument advanced by Affinity here. In Aguayo, the plaintiff brought suit on behalf of truck drivers that worked for defendant Oldenkamp Trucking. Oldenkamp argued that it was exempt from the overtime requirements of the FLSA due to the Motor Carrier Act exemption. Id., 2005 WL 2436477, at *5. Specifically, it argued that the Motor Carrier Act exemption "precludes class certification because it requires a fact-specific inquiry at the class composition stage and at the liability stage of all plaintiffs as to whether the exemption applies to the particular plaintiff." Id. The Aguayo Court rejected this argument holding that, at the notice stage, plaintiff need only demonstrate that the class was the victim of a single plan or design and that plaintiff had satisfied his burden by his "substantial allegations supported by declarations." Id., 2005 WL 2436477, at *7.[1]

Plaintiff recognizes that the Aguayo decision is not binding on this Court, but believes that its logic is persuasive. Before discovery is completed (or in this case, when discovery has barely started), the plaintiff cannot possibly be expected to counter every defense or assertion made by the defendant because the defendant already has access to all the information needed to mount a defense to a certification motion. Felix De Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660, 663-664 (E.D. Pa. 2001); Sperling v. Hoffman-LaRoche, Inc., 118 F.R.D. 392, 406 (D.N.J. 1988) ("To force Plaintiffs to counter every one of Defendant's assertions concerning the similarly situated question at this early stage of the action 'would condemn any large class claim under the [FLSA] to a chicken-and-egg limbo.'"). In essence, the courts are concerned that a plaintiff cannot get a case certified because he does not have the documents for the class, but he cannot get the documents for the class

---

[1] As discussed infra at page 7, the failure to submit a declaration from plaintiff Ruiz is not determinative because Affinity classified its drivers as independent contractors based on the Independent Truckman's Agreement and the Equipment Service Agreement, two documents that Affinity concedes all drivers were required to sign.

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF CERTIFICATION
4

because he does not have a class certified. <u>Felix De Asencio</u>, 130 F. Supp. 2d at 663-664; <u>Sperling</u>, 118 F.R.D. at 406.

This Court should not deny preliminary certification based on the Motor Carrier Act exemption because plaintiff has not been afforded discovery and, without a settled factual record, the Court would be "deprived of crucial facts that would support plaintiffs' arguments for class treatment." <u>Leuthold</u>, 224 F.R.D. at 468. Instead, plaintiff urges this Court to follow the well-reasoned opinion in <u>Aguayo</u> and the other decisions that have refused to deny certification based on a defendant's speculation that individuals issues will eventually arise. Affinity's statements that their will be two types of Motor Carrier Act exemptions which will create individual issues is, at this stage, purely hypothetical. As stated by the <u>Luethold</u> Court, the number and type of plaintiffs who chose to opt into the class will affect the Court's second tier inquiry regarding the disparate factual and employment situations of the opt-in plaintiffs. <u>Leuthold</u>, 224 F.R.D. at 468. If necessary, plaintiff can always narrow the class definition based on Affinity's records to "eliminate drivers involved in interstate transportation." <u>Aguayo</u>, 2005 WL 2436477, at *1.

**B.  The Difference in The Pay of Drivers Relates Only to The Issue of Damages**

Affinity's argument that drivers across the United States were compensated differently is merely an argument that the amount of damages for each class member will differ. The amount of money a driver makes is not determinative of whether the driver is an employee or independent contractor of Affinity; nor is it determinative of whether the driver falls within the Motor Carrier Act exemption. The only time a driver's compensation comes into play is when a driver's damages are being calculated to determine how much he is owed as a result of Affinity's failure to pay overtime.

Like Affinity's Motor Carrier Act exemption argument, the damages argument is premature at this stage of this litigation when plaintiff is seeking only *preliminary* certification. In addition, the argument defies common sense. A collective action would never proceed if a defendant could defeat a "similarly situated" showing by demonstrating that different employees worked different hours or were paid different amounts. Using Affinity's logic, union workers that perform the same jobs could not be part of the same class for unpaid overtime if the workers receive a 10¢ per hour

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF CERTIFICATION
5

1  pay differential. This is not the rule. In the class action context, it is well-established that variation
2  in the amount of damages suffered by individual class members does not compel the denial of class
3  certification. Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975); In re Visa Check/MasterMoney
4  Antitrust Litig., 280 F.3d 124, 139 (2d Cir. 2001). The same rationale has been extended to
5  collective actions brought under the FLSA. Velez v. Majik Cleaning Service, Inc., 2005 WL 106895
6  (S.D.N.Y. Jan. 19, 2005); McLaughlin v. Liberty Mut. Ins. Co., 224 F.R.D. 304, 312 (D. Mass 2004).

7        To state a *prima facie* case under the FLSA, plaintiff need prove only that the delivery drivers
8  are employees and that they perform work for which they were not properly compensated. Brock
9  v. Seto, 790 F.2d 1446 (9th Cir. 1986); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687
10 (1946). In its opposition, Affinity states that its drivers are paid either on a per stop basis or based
11 on the percentage of retail compensation. Def.'s Opp. p. 16-17. The FLSA specifically applies to
12 these types of "piece rate" compensation arrangements and an employer does not violate the FLSA
13 provided that the piece rate paid for overtime work is not less than one and one-half times the rates
14 applicable to the same work when performed during non-overtime hours. See 29 U.S.C. § 207(g)(1).
15 Thus, plaintiff's *prima facie* case requires him to prove only that the piece rate basis for Affinity
16 drivers was the same regardless of whether they were working during overtime hours or non-
17 overtime hours. See Aguayo, 2005 WL 2436477, at *8. Affinity has admitted as much. See e.g.,
18 Hitt Declaration in Opposition to Motion to Certify, Exs. A to N.

19       Affinity's argument about the amount of compensation that individual drivers receive affects
20 only the amount of damages to which a driver is entitled (the higher the per stop rate, the higher the
21 per stop overtime rate). Damages are not a *prima facie* element of an FLSA claim that plaintiff must
22 prove; they do not create individual issues; and they are not relevant at the preliminary certification
23 stage.

24
25
26
27
28

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF CERTIFICATION
6

### C. Plaintiff's Decision Not to Submit a Declaration

In connection with his motion for class certification, plaintiff demonstrated, through the submission of the Independent Truckman's Agreement and admissions made by Affinity in its Answers and declarations submitted in this matter, that Affinity's deliver drivers were victims of a single decision, policy or plan. Affinity itself cites to several cases that in which the courts look to the allegations, as well as declarations submitted by plaintiff, when consideration certification motions. In any event, declarations from the plaintiff are not necessary when defendant's admissions establish that the class of individuals plaintiff seeks to represent are the victims of a single decision, policy or plan. See Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (certifying collective action after reviewing allegations by plaintiff that defendant admitted).

Here, plaintiff has established that all delivery drivers are similarly situated based on the allegations in the Complaint and certain admissions by Affinity. Affinity admits that all delivery drivers are required to sign an Independent Truckman's Agreement and the Equipment Lease Agreement. Affinity Answer ¶ 15; Declaration of Tony Quinn In Support of Transfer, ¶ 2. The Independent Truckman's Agreement, attached as Exhibit B to the Declaration of Daniel A. Osborn in Support of Certification, provides that the drivers will deliver consumer items for Affinity's customers as independent contractors (not employees). Osborn Decl. Ex. B, ¶¶ 1, 9. The Equipment Lease Agreement, attached as Exhibit C to the Declaration of Tony Quinn, provides the same. Quinn Decl. ¶¶ 1,2.

Second, plaintiff has alleged that he and other delivery drivers were required to and did work in excess of forty hours per week without receiving overtime pay as required by the FLSA. Compl. ¶¶ 57-58. Although Affinity denied these allegations, it has not claimed that it paid drivers time and one-half when they worked over forty hours per week.[2] Instead, Affinity argues that the drives are not entitled to overtime because they are not employees and, even if they are employees, they are exempt based on the Motor Carrier Act exemption. See Answer ¶ 1. Consequently, plaintiff did not

---

[2] Indeed, Affinity's documents demonstrate that the drivers' piece rate was the same regardless of the amount of hours they work. See Hitt Decl. Ex. A to N.

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF CERTIFICATION
7

need to submit his own declaration because through Affinity's Answer, plaintiff was able to establish that all drivers are treated as independent contractors and that drivers were not paid overtime when they worked in excess of forty hours per week.

### D. The Requirement to Come Forward With Other Plaintiffs

Plaintiff is seeking to have this case preliminarily certified as a collective action so that he can give notice to the class (the other delivery drivers) of the pendency of this action and inform them about their ability to opt-into the litigation. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989). The majority of the courts that have considered the matter have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management. See Braunstein, 600 F.2d at 336 (notice to potential plaintiffs "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits"); Frank v. Capital Cities Communications, Inc., 88 F.R.D. 674, 676 (S.D.N.Y.1981) ("the experiences of other employees may well be probative of the existence vel non of a discriminatory practice, thereby affecting the merits of the plaintiffs' own claims"); Schwed, 159 F.R.D. at 375 ("[E]ven where later discovery proves the putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]."); Cook v. United States, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("Certainly, it is 'unlikely that Congress, having created a procedure for representative action [sic], would have wanted to prevent the class representative from notifying other members of the class that they had a champion.' "); Krueger, 1993 WL 276058 at *2 ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case."). Notice is particularly important in FLSA collective actions because the statute of limitations continues to run, to the prejudice of putative class members, until they file a consent form with the court.

Ironically, Affinity seeks to prevent plaintiff from sending notice to the class for the reason that no other class members have come forward to opt-into the litigation (If plaintiff cannot inform

the class about the pendency of the lawsuit, then how can class members be expected to join the lawsuit). To support this conundrum, Affinity cites to four cases that are readily distinguishable. In the lone case from this Circuit, the district court denied certification because plaintiff had "engaged in solicitation and has failed to come up with significant numbers of allegedly similarly situated employees who are likely to assert similar claims." PFOHL v. Farmers Ins. Group, Case No. CV03-3080 DT (RCX), 2004 WL 554834, *10 (C.D. Cal. March 01, 2004). Unlike the plaintiff in PFOHL, plaintiff Ruiz has not solicited other class members and been rebuffed. Indeed, as a former delivery driver, plaintiff has come into contact with only one other Affinity driver, Arturo Tapia, who has agreed to opt-into this lawsuit and who seeks to serve as a representative plaintiff.

The second decision relied upon by Affinity comes from the Eleventh Circuit, Dybach v. State of Florida Department of Corrections, and announces the rule that the district court should ensure that there are other employees who would be willing to join the lawsuit. Dybach, 942 F.2d 1562, 1567-1568 (11th Cir. 1991). The Eleventh Circuit does not offer any guidance as to how this rule should be applied, does not discuss where this requirement stems from, and does not state why such a requirement is important or necessary. Id. The remaining two cases both come from district courts within the Eleventh Circuit and were bound to follow Dybach. See e.g., Davis v. Charoen Pokphand, 303 F. Supp. 2d 1272 (M.D. Ala. 2004); MacKenzie v. Kindred Hosps. East, L.L.C., 276 F. Supp. 2d 1211 (M.D. Fla. 2003). Nonetheless, both cases are still distinguishable. In Davis, the court treated the plaintiff's motion for certification under the more rigorous standard associated with the second stage because it determined that plaintiff had engaged in substantial discovery. Davis, 303 F. Supp. 2d at 1276. The MacKenzie Court, like the PFOHL Court, denied certification because the plaintiff admitted that he had solicited other employees but was unsuccessful in enticing two former colleagues to participate in the action. MacKenzie, 276 F. Supp. 2d at 1220.

Plaintiff Ruiz submits that this Court should join the majority of other courts that have not required the named plaintiff to come forward with additional class members that wish to join the lawsuit. First, nothing in the language of the FLSA or the legislative history demonstrates Congress intent that the named plaintiff find other individuals that want to join the action. Second, for a

former employee like plaintiff Ruiz, a requirement to recruit other employees is particularly burdensome. Finally, such a requirement undermines both the purpose of giving notice (which is to inform individuals about the pendency of the lawsuit) and the reason for court involvement. As explained by the United States Supreme Court, class actions serve important goals, but they can be abused. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989). To prevent this abuse, the Supreme Court instructed the district courts to oversee and approve of the form of notice to class members to prevent misleading communications from the plaintiff or his attorneys. Id. If this Court adopts the rule articulated in Dybach, it will be requiring plaintiff to engage in the exact conduct that the Supreme Court decided needed court supervision and opens the door for the dissemination of false information to the class members.[3]

## CONCLUSION

In light of the foregoing, plaintiff respectfully request that the Court preliminarily certify this litigation as a collective action, require defendant to produce the last known names, addresses, telephone numbers and e-mail addresses (if known) of all prospective class members, and permit plaintiff to send notice to these persons.

Dated: New York, New York
November 4, 2005

BEATIE AND OSBORN LLP

By: *Daniel A. Osborn*
Daniel A. Osborn
521 Fifth Avenue, 34th Floor
New York, New York 10175
(212) 888-9000

Attorneys for Plaintiff

---

[3] Plaintiff recognizes that the Supreme Court's discussion in Hoffman was reminding the district courts to be on guard for unscrupulous plaintiff's lawyers who will mislead the class into joining the lawsuit. Nonetheless, plaintiff cites the purpose for requiring court involvement in providing notice behind the rule because it contradicts Affinity's argument that plaintiff should reach out to other class members and would empower unscrupulous lawyers to engage in the very conduct the Supreme Court sought to avoid.

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF CERTIFICATION
10

## PROOF OF SERVICE BY FEDERAL EXPRESS

I am over the age of 18 and not a party to the within action. I am employed by Beatie and Osborn LLP, in New York County, State of New York. My business address is 521 Fifth Avenue, 34th Floor, New York, New York, 10175.

On November 4, 2005, I served: **(1) Reply Memorandum of Law in Support of Certification of a Collective Action; (2) Consent To Join form for Arturo Tapia; and (3) Declaration of Arturo Tapia** on the persons or entity named below by enclosing a copy of the documents in an envelope designated by Federal Express, and by delivering to a carrier or driver authorized by Federal Express to receive documents or by depositing in a box or other facility regularly maintained by Federal Express, for overnight delivery with delivery fees paid or provided for, and addressed as below, on the date and place shown below.

Date of mailing: November 4, 2005   Place of mailing: New York, New York.

**Person(s) and/ or Entity(ies) to Whom Mailed:**

James H. Hanson, Esq.
Scopelitis, Garvin, Light & Hanson, PC
10 West Market Street, Suite 1500
Indianapolis, Indiana 46204

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on: November 4, 2005, at New York, New York.

Christopher J. Marino

PROOF OF SERVICE BY FEDERAL EXPRESS