USDC SCAN INDEX SHEET

















```
JPP    7/17/06   14:04
3:05-CV-02125   RUIZ V. AFFINITY LOGISTICS
*27*
*RPLY.*
```

James H. Hanson, *Pro Hac Vice*
Ind. Bar No. 08100-49
SCOPELITIS, GARVIN, LIGHT & HANSON
10 West Market Street, Suite 1500
Indianapolis, IN 46204
(317) 637-1777
Fax: (317) 687-2414
jhanson@scopelitis.com

Daniel R. Barney, *Pro Hac Vice*
District of Columbia Bar No. 355537
SCOPELITIS, GARVIN, LIGHT & HANSON
1850 M Street, N.W., Suite 280
Washington, DC 20036-5804
(202) 783-9222
Fax: (202) 783-9230
dbarney@scopelitis.com

Kathleen C. Jeffries
Cal. Bar No. 110362
SCOPELITIS, GARVIN, LIGHT & HANSON
790 E. Colorado Blvd., 9th Floor
Pasadena, CA 91101
(626) 795-4700
Fax: (626) 795-4790
kjeffries@scopelitis.com

Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO RUIZ, | CASE NO. CV05-2125-R(CAB) |
| Plaintiff, | REPLY MEMORANDUM IN SUPPORT OF MOTION FOR |
| vs. | PARTIAL SUMMARY JUDGMENT |
| | The Honorable John S. Rhoades, Sr. |
| AFFINITY LOGISTICS CORP., | Courtroom 5, 3rd Floor |
| | Hearing Date: July 17, 2006 |
| Defendant. | Time:        2:00 PM |



05CV2125

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ............................................................................................ ii

I.   INTRODUCTION ................................................................................................. 2

II.  ARGUMENT ......................................................................................................... 2

    A.   Plaintiff's Concession that Five Percent of Sears' Shipments are in Fulfillment of Specific Customer Orders Requires the Entry of Partial Summary Judgment ... 2

    B.   Affinity Logistics has Demonstrated that Sears Shipments to Its DDCs Contain Products Designated for Specific Customers, but This is Not Required to Show Movement in Interstate Commerce.......................................................................... 4

    C.   The Temporary Storage of the Sears Products Does Not Affect the Interstate Nature of the Shipments ....................................................................................... 10

III. CONCLUSION.................................................................................................... 12

**TABLE OF AUTHORITIES**
**Cases**

*Atlantic Coastline R. v. Standard Oil Co.*, 275 U.S. 257 (1927) ........................................4

*Badgett v. Rent-Way, Inc.*, 350 F.Supp.2d 642 (W.D. Pa. 2004) ........................................4

*Baird v. Wagoner Transportation Co.*, 425 F.2d 407 (6th Cir. 1970) ........................................5

*Barefoot v. Mid-America Dairymen, Inc.*, 826 F.Supp. 1046 (N.D. Tex. 1993) ........................................4

*Brennan v. Schwerman Trucking Co. of Virginia*, 540 F.2d 1200 (4th Cir. 1976) ........................................3

*Burlington Northern, Inc. v. Weyerhaeuser Co.*, 719 F.2d 304 (9th Cir. 1983) ........................................5, 6

*California Trucking Association v. Interstate Commerce Commission*, 900 F.2d 208 (9th Cir. 1990) ........................................5, 6

*Central Freight Lines v. Interstate Commerce Commission*, 899 F.2d 413 (5th Cir. 1990) ........................................5, 6

*Foxworthy v. Hilland Dairy Co.*, 997 F.2d 670 (10th Cir. 1993) ........................................5

*Friedrich v. U.S. Computer Services*, 974 F.2d 409 (3rd Cir. 1992 ........................................3

*Galbreath v. Gulf Oil Corp.*, 413 F.2d 949 (5th Cir. 1969 ........................................11

*Hutson v. Rent-A-Center, Inc.*, 209 F.Supp.2d 1353 (M.D. Ga. 2001) ........................................3

*International Brotherhood of Teamsters v. Interstate Commerce Commission*, 921 F.2d 904 (9th Cir. 1990) ........................................5, 6

*Levinson v. Spector Motor Service*, 331 U.S. 649 (1947) ........................................3, 5

*Merchants Fast Motor Lines v. ICC*, 5 F.3d 911 (5th Cir. 1993) ........................................5, 11

*Middlewest Motor Freight Bureau v. Interstate Commerce Commission*, 867 F.2d 458 (8th Cir. 1989) ........................................5

*Morris v. McComb*, 332 U.S. 422 (1947) ........................................2, 3

*Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947) ........................................3

*Reich v. American Driver Service, Inc.*, 33 F.3d 1153 (9th Cir. 1994) ........................................3

*Roberts v. Levine*, 921 F.2d 804 (8th Cir. 1990) ........................................5, 11

*Sinclair v. Beacon Gasoline Corp.*, 447 F.2d 5 (W.D. La 1976) ....................................................... 3

*Southern Pacific Transport Co. v. ICC*, 565 F.2d 615 (9th Cir. 1977) ....................................... 9, 10

*State of Texas v. U.S.*, 866 F.2d 1546 (5th Cir. 1989) ............................................................... 5, 11

*Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943) .............................................................. 4, 8

*Watkins v. Ameripride Services*, 375 F.3d 821 (9th Cir. 2004) ......................................................... 6

**Statutes**

29 C.F.R. § 782 ................................................................................................................................. 5

29 U.S.C. § 213(b)(1) ................................................................................................................. 1, 12

**Other Authorities**

*Policy Statement – Motor Carrier Interstate Transportation – From Out-of-State Through Warehouses to Points in Same State (ex parte no. MC-207) 8 ICC 2nd 470, 1992 WL 122949 *2 (May 6, 1992)* .................................................................................................................................. 5

Defendant, Affinity Logistics Corporation ("Affinity Logistics"), by counsel and pursuant to Fed.R.Civ.P. 56 and Civ.L.R. 7.1, submits this Reply Memorandum in Support of Motion for Partial Summary Judgment as to Count I of the Class Action Complaint (the "Complaint") filed by Plaintiff, Fernando Ruiz.

## I.   INTRODUCTION

Affinity Logistics has requested partial summary judgment against Plaintiff on the basis that, as a driver in interstate commerce, Plaintiff qualified for the Motor Carrier Exemption under Section 13(b)(1) of the Fair Labor Standards Act, as amended (the "FLSA"), 29 U.S.C. § 213(b)(1), and was therefore not entitled to overtime compensation under the FLSA. Plaintiff advances two opposing arguments. First, Plaintiff argues that the shipments of products by Sears, Roebuck & Co. ("Sears") are not part of interstate commerce because Sears did not order the products to fulfill specific customer orders. Second, Plaintiff argues that Sears shipments of products to its customers are not part of interstate commerce because some portions of those shipments "come to rest" and are "held" in its Direct Distribution Center ("DDCs"), including the Ontario DDC, for "roughly three to four weeks" before they are delivered to customers, thus breaking the interstate movement. *Plaintiff's Memorandum of Points and Authorities in Opposition to Affinity's Summary Judgment Motion* ("Plaintiff's Opposition Memorandum") at 2.

Because Plaintiff has conceded a fact that at least some of the products move in interstate commerce, the Court need not address Plaintiff's two arguments. Rather, the Court may enter partial summary judgment on this basis alone. Moreover, as discussed below, neither argument is supported by the facts or the applicable law, and the Court may therefore enter partial summary judgment notwithstanding Plaintiff's admission.

## II. ARGUMENT

### A. Plaintiff's Concession that Five Percent of Sears' Shipments are in Fulfillment of Specific Customer Orders Requires the Entry of Partial Summary Judgment

According to Sears, 30-40 percent of the shipments coming in to the Ontario DDC and being delivered to customers from its Market Delivery Operations ("MDOs"), including the San Diego MDO, are to fulfill specific customer orders. *Deposition of Christina Miranda* ("Miranda Dep.")[1] at 99-100. Plaintiff takes exception to the percentages, but concedes that "in reality" this portion is "in the range of five percent" and does not dispute that at least this percentage of Affinity Logistics' transportation for Sears is in interstate commerce. *Plaintiff's Opposition Memorandum* at 14. Thus, even if not all of the Sears shipments out of the MDOs are in interstate commerce, a point that Affinity Logistics in no way concedes, Plaintiff's admission is fatal to his FLSA claim.[2]

As has been recognized by many courts, a motor carrier engaged in both interstate and intrastate commerce may not be subjected simultaneously to the jurisdiction of the Secretary of Transportation under the Motor Carrier Act[3] and the Secretary of Labor under the FLSA. *Morris v. McComb*, 332 U.S. 422, 437-38 (1947). The U.S. Supreme Court stated the following almost 60 years ago:

---

[1] The citation to the *Deposition of Greg Inwood* ("Inwood Dep.") and the Miranda Dep. in Plaintiff's Opposition Memorandum or in this brief are to "Uncertified Rough Draft[s]," attached to Plaintiff's Opposition Memorandum as *Exs. A* and *B*, respectively. If the witnesses or court reporter make any changes to the depositions affecting what is stated or argued in the briefs, those changes will be brought to the Court's attention as soon as possible.

[2] In addition to the shipments of products moving through the DDC to the MDOs to particular customers, both Ms. Miranda and Mr. Inwood testified that special order or "brands net" items are shipped directly from the manufacturers to the MDOs for delivery to particular customers. *Miranda Dep.* at 95-96; *Inwood Dep.* at 30-31. These direct interstate shipments, with no intervening stop at a DDC, make up two to three and a half percent of Sears' shipments. *Inwood Dep.* at 30.

[3] As explained in footnotes 2 and 3 of Affinity Logistics' *Memorandum of Points and authorities in Support of Motion for Partial Summary Judgment* ("Defendant's Memorandum"), all functions, powers and duties of the Interstate Commerce Commission ("ICC") were transferred to the Secretary of Transportation.

> It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary of Transportation's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment.

*Levinson v. Spector Motor Service*, 331 U.S. 649, 674-675 (1947). *See also Reich v. American Driver Service, Inc.*, 33 F.3d 1153, 1155 (9th Cir. 1994) ("even a minor involvement in interstate commerce as a regular part of an employee's duties" can trigger the motor carrier exemption to the FLSA).

Furthermore, although the Supreme Court has recognized a *de minimus* exception to FMCSA jurisdiction over the activities of *non-drivers* (e.g., loaders),[4] courts regularly hold that the *de minimus* rule should seldom, if ever, be applied to the driver of a motor vehicle carrying property in interstate commerce. *Friedrich v. U.S. Computer Services*, 974 F.2d 409, 417 n.10 (3rd Cir. 1992); *Hutson v. Rent-A-Center, Inc.*, 209 F.Supp.2d 1353, 1357 (M.D. Ga. 2001); *Sinclair v. Beacon Gasoline Corp.*, 447 F.2d 5, 11 (W.D. La. 1976). *See also Levinson*, 330 U.S. at 679.

The landmark decision in *Morris* is controlling here. In *Morris*, the Supreme Court ruled that drivers were exempt from the FLSA overtime requirements even though interstate transportation constituted only *three* to *four* percent of the motor carrier employer's total services. 332 U.S. at 434. Accordingly, even under Plaintiff's strained interpretation attributing only five percent of Affinity Logistic's service for Sears to interstate commerce, the *Morris* decision confirms that the Motor Carrier Exemption applies to Plaintiff's activities. *See also Brennan v. Schwerman Trucking Co. of Virginia*, 540 F.2d 1200 (4th Cir. 1976) (Motor Carrier Exemption applicable to drivers even though percentage of employer's annual interstate business

---

[4] *See Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947).

over eight-year period ranged from 1.2 percent to 9.7 percent); *Barefoot v. Mid-America Dairymen, Inc.,* 826 F.Supp. 1046 (N.D. Tex. 1993) (Motor Carrier Exemption applicable even though plaintiffs performed only 28 interstate trips over the course of four years); *Badgett v. Rent-Way, Inc.,* 350 F.Supp.2d 642 (W.D. Pa. 2004) (Motor Carrier Exemption applicable even if employee made less than ten interstate trips during two years of employment). In effect, Plaintiff's admission means that Affinity Logistic's drivers are called upon in the regular course of their employment to deliver shipments moving in interstate commerce and proves that Plaintiff has no FLSA claim as a matter of law.

**B.    Affinity Logistics has Demonstrated that Sears Shipments to its DDCs Contain Products Designated for Specific Customers, but this is Not Required to Show Movement in Interstate Commerce**

Plaintiff is simply wrong in his contention that goods move continuously in interstate commerce only when the shipper has earmarked the goods for specific customers or otherwise knows the final destination of the product. Contrary to Plaintiff's representations, neither *Walling v. Jacksonville Paper Co.,* 317 U.S. 564 (1943), nor *Atlantic Coastline R. v. Standard Oil Co.,* 275 U.S. 257 (1927), nor *Burlington Northern, Inc. v. Weyerhaeuser Co.,* 719 F.2d 304 (9th Cir. 1983), impose such a requirement. Rather, those cases merely stand for the proposition that, *if* the goods are earmarked, the transportation is in interstate commerce, but ultimately it is the fixed and persisting intent of the shipper at the time of shipment that determines the interstate nature of the movement. And, since at least 1992, it has been the position of the ICC, as predecessor to the Federal Motor Carrier Safety Administration ("FMCSA"), that the shipper's lack of knowledge of the ultimate destination or specific consignee does *not* in and of itself break the continuity of or change the interstate character of the transportation movement. *Policy Statement – Motor Carrier Interstate Transportation – From Out-of-State Through Warehouses*

*to Points in Same State* (ex parte no. MC-207) 8 ICC 2nd 470, 472, 1992 WL 122949 *2 (May 6, 1992).

In point of fact, the ICC has regularly held that single-state shipments are mere continuations of the interstate transportation of goods from out-of-state origin points when the shipments are not made pursuant to specific customer orders, but are rather based upon the forecasting of predictable customer demands. Furthermore, such rulings by the ICC have been routinely upheld by the federal courts, including the Ninth Circuit Court of Appeals. *Merchants Fast Motor Lines, Inc. v. Interstate Commerce Commission*, 5 F.3d 911 (5th Cir. 1993); *International Brotherhood of Teamsters v. Interstate Commerce Commission*, 921 F.2d 904 (9th Cir. 1990); *California Trucking Association v. Interstate Commerce Commission*, 900 F.2d 208 (9th Cir. 1990); *Central Freight Lines v. Interstate Commerce Commission*, 899 F.2d 413 (5th Cir. 1990); *Middlewest Motor Freight Bureau v. Interstate Commerce Commission*, 867 F.2d 458 (8th Cir. 1989); *State of Texas v. U.S.*, 866 F.2d 1546 (5th Cir. 1989).[5] Plaintiff's failure to even acknowledge this compelling line of authority completely undermines the outmoded customer earmarking requirement Plaintiff advances.[6]

---

[5] The federal courts' deference to the ICC is particularly appropriate because, as the Supreme Court has acknowledged, the Motor Carrier Exemption is to be measured not by regulations of the Secretary of Labor, but rather by the scope of the safety program for interstate motor carrier transportation as it was interpreted by the ICC. This reading of the Motor Carrier Exemption, which acknowledges the driver qualification and maximum hours of service requirements for interstate motor carrier drivers, "puts safety first." *Levinson*, 330 U.S. at 676-677. Note also that, in each of the cases cited above, the single-state segment of the transportation was the *second* leg of the interstate journey, which directly contradicts Plaintiff's unsupported theory that earmarking should always be required in such cases. *Plaintiff's Opposition Memorandum* at 9-10 n.5.

[6] In this regard, Plaintiff's reliance upon *Baird v. Wagoner Transportation Co.*, 425 F.2d 407 (6th Cir. 1970), and *Foxworthy v. Hilland Dairy Co.*, 997 F.2d 670 (10th Cir. 1993), is unavailing. Both cases rely upon a three-part test first employed by the ICC in 1957 as expressed in Ex Parte No. MC-48, 71 MCC 17 (1957), and identified as the position of the ICC in 29 C.F.R. § 782.7(b)(2). *Baird*, 425 F.2d at 410-411; *Foxworthy*, 997 F.2d at 673. The ICC, however, has long since abandoned that narrow three-part test in favor of a "totality of the circumstances" evaluation of the shipper's fixed and persisting intent, which has been both acknowledged and approved by the courts, including the Ninth Circuit. *See International Brotherhood of Teamsters*, 921 F.2d at 908; *Roberts v. Levine*, 921
Continued

In the face of such authority, Plaintiff's entire theory rests, then, on *Watkins v. Ameripride Services,* 375 F.3d 821 (9th Cir. 2004). *Watkins,* however, is completely distinguishable from the facts of this case in that there was no evidence presented concerning the shipper's intent with respect to how, when, and for what customer demands product was shipped from its out-of-state origin to the in-state warehouse, and, in fact, all customer orders were filled directly from that warehouse for in-state delivery. Furthermore, to the extent *Watkins* suggests that specific customer earmarking of goods is always required, such dicta simply cannot be squared with the same court's decisions in *International Brotherhood of Teamsters, supra,* and *California Trucking Association, supra,* both of which present factual settings far more analogous to the facts of this case. Plaintiff's reliance upon *Watkins,* therefore, does not defeat Affinity Logistic's motion for partial summary judgment.

The undisputed evidence in this case shows that much of the product shipped to the DDC is earmarked for particular customers. Plaintiff concedes that at least five percent of the product is so earmarked. *Plaintiff's Opposition Memorandum* at 14. In addition, the Ontario DDC prepares a *daily* Late Due In Report. *Miranda Dep.* at 28. This report lists orders for particular customers that are due to ship from the Ontario DDC in the succeeding 2-3 day period. *Miranda Dep.* at 29, 40. This report contains an order number associated with a particular customer and a product identification number identifying a specific product to be delivered to the DDC and then on to an MDO for home delivery to a customer or a retail store for pick-up by a customer. *Miranda Dep.* at 30-31. On average, these daily reports consist of 35 pages listing particular

---

F.2d 804, 811-12 (8th Cir. 1990); *California Trucking Association,* 900 F.2d at 213; *Central Freight Lines,* 899 F.2d at 421.

customer order numbers for particular products.[7] *Miranda Dep.* at 48. Thus, it is undisputed that products are earmarked for specific customers at the time those products arrive at the DDC.

In an attempt to create an issue of fact on this subject, Plaintiff has misstated the deposition testimony of Sears employee, Greg Inwood.[8] In his deposition, Mr. Inwood described the two-step process by which Sears orders its products from the various manufacturers. *Inwood Dep.* at 45-50. Based on the forecasting of its customer's orders, Sears first provides its manufacturers with a projected order, which is an advance estimate of what Sears thinks it will need to have from the manufacturers in order to meet customer demand. *Inwood Dep.* at 45. Sears later will provide its manufacturers with a committed or firm order that becomes the final order of products. *Inwood Dep.* at 46. This ordering of products is based on both a forecast of expected customer demand, promotions, as well as current orders that have not been filled. *Inwood Dep.* at 15, 50.

Plaintiff points to one line of testimony in which Mr. Inwood testified that the goods were available for sale when they reach the DDC. *Plaintiff's Opposition Memorandum* at 3. Plaintiff then tries to make the argument that Mr. Inwood's testimony conflicts with the testimony of another Sears employee, Christina Miranda, who testified that the goods were available for sale at the time a Sears' order with a vendor became firm. *Plaintiff's Opposition Memorandum* at 2.

---

[7] The number of products earmarked for particular customers is actually higher than that reflected on the Late Due In Reports because those reports do not include products on a shipment that are earmarked for particular customers but that are not scheduled to be shipped out in the next 2-3 days. *Miranda Dep.* at 82-83, 93.

[8] Plaintiff has misstated or mischaracterized the evidence throughout Plaintiff's Opposition Memorandum, so much so that Affinity Logistics does not have enough pages in this Reply Memorandum to note each and every one. For example, on page one of Plaintiff's Opposition Memorandum, Plaintiff makes factual representations from the Complaint and then cites to Affinity Logistics' answer as the basis for those representations. Affinity Logistics in no way admitted all of what Plaintiff represents it admitted, and a comparison of the Complaint with the answer will give some indication of the concern Affinity Logistics has over the extent of Plaintiff's misrepresentations and mischaracterizations. Affinity Logistics has, however, addressed some of the misstatements and mischaracterization in this Reply Memorandum.

There is no conflict in this testimony. Mr. Inwood did testify that the goods were available for sale when they reached the DDC, but Plaintiff only quoted part of Mr. Inwood's testimony. In the same line of questioning, Mr. Inwood completed his answer stating the following: "You can also sell against what's due into the facility." *Inwood Dep.* at 29. Thus, Mr. Inwood, consistent with Ms. Miranda, testified in his deposition that a sales associate could sell not only products that were in the DDC, but also products that were due into the DDC (i.e., or products that had been placed on a firm order with a vendor). *Inwood Dep.* at 28-29, 48-49, 99-101. Mr. Inwood provided the same testimony in his Declaration submitted in support of Affinity Logistics' Motion for Partial Summary Judgment, *Defendant's Memorandum,* Ex. 3, ¶ 6, and Ms. Miranda similarly testified that the goods were available for sale at the time that a firm order had been placed. *Miranda Dep.* at 80. Thus, both Mr. Inwood and Ms. Miranda have consistently testified that merchandise was available for purchase by customers, and in fact was purchased by customers, before the merchandise arrived at the DDC.

Plaintiff has also found it necessary to misstate the standard for examining a shipper's fixed and persisting intent. Such intent must be determined at the time of shipment and not, as Plaintiff suggests, at the time the shipper places an order with a manufacturer. As the Supreme Court has made clear, the Motor Carrier Exemption will extend to transportation within a state that "is a practical continuity of movement from the manufacturers or suppliers without the state, through [a] warehouse and on to customers whose prior orders are being filled . . . ." *Walling,* 317 U.S. at 569. The standard to be applied in determining whether a particular shipment is interstate is as follows:

> Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by shipper's

> fixed and persisting transportation intent *at the time of the shipment*, and is ascertained from all of the facts and circumstances surrounding the transportation.

*Southern Pacific Transport Co. v. ICC,* 565 F.2d 615, 617 (9th Cir. 1977) (emphasis added).

The undisputed facts show that, once Sears provides its manufacturers with firm orders, Sears customers are able to purchase the merchandise at its retail stores prior to the time the merchandise is manufactured, prior to the time the merchandise is shipped and even while in the merchandise is in transit to the DDC. Thus, by the time Sears takes possession of this merchandise from the manufacturer and ships it to the DDC, it knows and intends that at least some portion of that merchandise has already been sold and designated to fill customer orders and that another portion of that merchandise will be sold to specific customers while in transit from the manufacturers to the DDCs. As Ms. Miranda testified, for each shipment arriving at the DDC, 60 percent of the shipments to the Ontario DDC will go on to the MDOs, including the San Diego MDO, for home delivery, *Miranda Dep.* at 99-100, and 30-40 percent of the shipments to the MDOs, including the San Diego MDO, are earmarked for particular customers by the time the shipments arrive at the Ontario DDC. *Miranda Dep.* at 99.[9]

Plaintiff apparently recognizes that this standard is fatal to his claim. Therefore, Plaintiff has found it necessary to divert the Court's attention from the "at the time of shipment" standard

---

[9] In an attempt to create an issue of fact, Plaintiff argues that Ms. Miranda's estimated percentage of product earmarked for particular customers is inflated. Plaintiff cites to page 99 of Ms. Miranda's deposition and mischaracterizes her testimony to make it appear as though she is arguing that 30-40 percent of *all* merchandise that arrives at the DDC is earmarked for particular customers. *Plaintiff's Opposition Memorandum* at 13. This then allows Plaintiff to argue that Ms. Miranda did not take into account the 40 percent of the merchandise coming into the DDC intended for retail stores and that her estimate is therefore inflated by 40 percent. When Ms. Miranda gave her estimate of 30-40 percent, she made it very clear that it was not 30-40 percent of all merchandise coming into the DDC, but rather 30-40 percent of the merchandise coming into the DDC for MDO home delivery. *Miranda Dep.* at 99-100. Only by mischaracterizing this testimony can Plaintiff make the argument that Ms. Miranda's estimate is inflated. Thus, Ms. Miranda's testimony in no way contradicts Mr. Inwood's testimony, and there is no factual dispute that precludes summary judgment.

set forth by the Ninth Circuit in *Southern Pacific Transport Co.* Knowing that Sears is filling specific customer orders at the time of shipment, Plaintiff argues that this Court should focus instead on Sears' fixed and persisting transportation intent *at the time it places its order with a manufacturer*.

> *[W]hen Sears orders products from its vendors*, it does so without a specific customer order for those products. *Without proof that Sears places order* (sic) *to fulfill specific customer orders*, Affinity cannot demonstrate that the shipment of goods is part of interstate commerce.

*Plaintiff's Opposition Memorandum* at 2 (emphasis added).

> *At the time when Sears' computer system places the firm order*, there are no customer orders pending for that merchandise.

*Plaintiff's Opposition Memorandum* at 3 (emphasis added).

Plaintiff argues that this Court should focus on Sears *ordering* intent rather than its subsequent *shipping* intent. Obviously, Plaintiff's proposed standard does not result in an evaluation of Sears' fixed and persisting transportation intent at the time it takes possession of the goods and begins to ship them. At that moment, Sears intends that a portion of the shipment – by Plaintiff's concession five percent -- has been sold or will be sold in transit to specific customers and thus moves in interstate commerce.

### C. The Temporary Storage of the Sears Products Does Not Affect the Interstate Nature of the Shipments

Also unavailing is Plaintiff's emphasis upon the amount of time Sears products may spend in the in-state warehouse. As the ICC acknowledged in its 1992 policy statement, time limitations on storage are not determinative of the interstate character of the transportation movement, *Policy Statement,* 8 ICC 2nd 470, 1992 WL 122949 *2, and courts have regularly concluded that rather lengthy storage times do not disrupt or destroy the interstate character of

the transportation involved. *See Merchants Fast Motor Lines,* 5 F.3d 911 (45 days of storage); *Roberts*, 921 F.2d at 807 (storage for up to six months); *State of Texas*, 866 F.2d 1546 (two to three months of storage). Nor is it relevant that Sears products are so fungible as to be substituted one for another based upon customer demands. As indicated in *Galbreath v. Gulf Oil Corp.*, 413 F.2d 949, 946 (5th Cir. 1969), there is no distinction between fungible and non-fungible goods for purposes of determining the interstate nature of their transportation.[10]

In any event, Plaintiff has exaggerated the length of time that products remain at the DDC. Plaintiff states that products remain at the DDC for between two-three weeks, 21-28 days. three weeks, 21 days, 23 days, 23-30 days or 30 days. *Plaintiff's Opposition Memorandum* at 4-7, 10-12. In actuality, Mr. Inwood testified that that the average length of stay for all products at the DDC is 21 days and company documents confirm the 21-day average. *Inwood Dep.* at 56-58, 61-62, 97-98, 111. Mr. Inwood also clarified that one-third of the DDC inventory has already been sold and is awaiting delivery to particular customers. *Inwood Dep.* at 98. Mr. Inwood also clarified that the 21-day average includes slower moving products and that the average stay at the DDC for faster moving products, such as washers and dryers, is ten days. *Inwood Dep.* at 103-104. Moreover, Ms. Miranda testified that the length of stay at the DDC is much shorter for those products listed on the daily Late Due In Reports. Those products earmarked for particular customers are shipped out of the DDC within 24 hours. *Miranda Dep.*

---

[10] Plaintiff argues that, when the merchandise is sent from the manufacturer to the MDO, the merchandise is "commingled and not separated for particular customers." *Plaintiff's Opposition Memorandum* at 12. In support of this argument, Plaintiff cites to pages 84, 90-91, and 100 of Ms. Miranda's deposition. However, on these pages, Ms. Miranda simply testifies that products for different MDOs are consolidated on a trailer coming into the DDC, *Miranda Dep.* at 84, that different brands of products (GE, Whirlpool, etc.) are consolidated on trailers *going from the DDC to the MDO, Miranda Dep.* at 90-91, and that a Hot Trailer Report will be generated if a particular piece of merchandise on a trailer is required for an order. *Miranda Dep.* at 100. Mr. Miranda never states that the products are "commingled" are not separated for particular customers. Plaintiff's citation to the record does not support his assertions.

at 94. These time periods are well within the storage periods upheld by the courts and do not defeat the interstate nature of the shipment.

### III.   CONCLUSION

The essential and undisputed facts of this case are that Sears, as the shipper of appliances purchased from various manufacturers located throughout the United States and Mexico, had a fixed and persisting intent that its appliances would be picked up at various manufacturer locations, transported across state lines to its DDCs located throughout the United States, including the Ontario DDC, and delivered to its customers. Plaintiff's delivery of those appliances in the San Diego area from the San Diego MDO was the final leg of a practical continuity of movement across state lines. Such deliveries are in interstate commerce, and, if ever reclassified as an employee, Plaintiff would therefore be exempt from the payment of overtime under the Motor Carrier Exemption to the FLSA, 29 U.S.C. § 213(b)(1). Affinity Logistics is therefore entitled to partial summary judgment on Count I of the Complaint.

Respectfully submitted,

*/s/ James H. Hanson*
James H. Hanson
Daniel R. Barney
Kathleen C. Jeffries

Attorneys for Defendant,
Affinity Logistics Corp.

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by e-mail to dosborn@bandolaw.com and upon the following by FedEx this 10th day of July, 2006:

Daniel A. Osborn
BEATIE AND OSBORN
521 Fifth Avenue, 34th Floor
New York, NY 10175

Elic Anbar
11770 Bernardo Plaza Ct., Suite 453
San Diego, CA 92128

_____
James H. Hanson

h:\users\bleive\documents\affinity\by ruiz 12293.1\southern district\summary judgment\reply brief.doc