# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO RUIZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AFFINITY LOGISTICS CORPORATION,<br><br>Defendant. | CASE NO. 05CV2125 JLS (CAB)<br><br>**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 59) |

Prior to reassignment of this action,[1] the Hon. John S. Rhoades granted partial summary judgment to Affinity Logistics Corporation ("defendant") on Fernando Ruiz's ("plaintiff") cause of action for violation of the Fair Labor Standards Act ("FLSA"). (Doc. No. 37.) Presently before the Court is defendant's motion for summary judgment on the remainder of plaintiff's claims. (Doc. No. 59.) The Court grants in part the motion with respect to the portion of Count II seeking overtime pay pursuant to California law. Otherwise, the Court denies the remainder of defendant's motion.

//

//

---

[1] After transfer into this district, the complaint was originally assigned to Judge Rhoades. Upon Judge Rhoades's death, the action was reassigned to the Hon. Larry A. Burns on September 11, 2007. The action was finally reassigned to the Hon. Janis L. Sammartino on November 19, 2007.

# BACKGROUND

**A.    Facts**

This case is a putative class action involving current and former delivery drivers of Affinity Logistics Corporation ("defendant") who allegedly did not receive wages, overtime, and benefits to which they were entitled under federal and California law. Named plaintiff Fernando Ruiz entered the United States in 1988 and obtained permanent residency. Since 1990, Ruiz earned a living as a truck driver making home deliveries. Before and during his employment with defendant, delivered appliances to customers of Sears, Roebuck, & Co. ("Sears"). For nearly four years, ending in 2003, Ruiz worked as a delivery driver for Penske Logistics Corporation ("Penske"), which had the contract with Sears Logistics Services, Inc. ("SLS") to deliver appliances to Sears customers. Ruiz worked for Penske as an employee. Penske lost the SLS contract to defendant in late 2003.

Facing the loss of his job, plaintiff engaged in negotiations with defendant to do the same work on the Sears contract. Plaintiff spoke with defendant "about becoming a contractor for" defendant. (Ruiz Depo., at, e.g., 31:14.) Plaintiff signed the Independent Truckman's Agreement ("ITA") and Equipment Lease Agreement ("ELA") on November 9, 2003. Paragraph 9 of the ITA represented, "[t]he parties intend to create an independent contractor relationship and not an employer-employee relationship." (Def. Exhibit 7 ¶ 9.) The ELA added that plaintiff "will be acting in his own separate capacity and not as an agent, employee, partner, joint venture or associate of [defendant]. It is expressly understood and agreed that [plaintiff] is an independent contractor of [defendant] in all manners and respects." (Def. Exhibit 8 ¶ 2(a).) When plaintiff signed with defendant, plaintiff understood that he "w[as] going to be an independent contractor[.]" (Id. at 80:13-14.)

After plaintiff signed the agreements, defendant provided a copy of its "Contractor Delivery Procedures Manual." (See Pl. Exhibit D (2003 manual for Sears drivers) & E (2005 manual for Sears drivers).) The procedures manual provided detailed descriptions of "Basic Delivery Procedures" in sixteen different areas (e.g., handling the lists of customer orders ("manifests"), delivering merchandise, communicating with route monitors after delivery,

| | |
|---|---|
| 1 | reporting vehicle breakdowns).  It also described eight "Other Requirements" (<u>e.g.</u>, attending daily |
| 2 | operations meetings, stocking vehicles with certain accessories, and appearance/grooming).  The |
| 3 | manual further explained the procedures for delivering certain appliances, handling claims of loss |
| 4 | or theft, and ways for measuring contractor quality. |

To work for defendant, Ruiz had to start his own business (which he named "R&S Logistics") and file a Fictitious Business Name Statement.  He paid for his business license.  He leased a truck from Ryder Truck Rental, Inc., which, in turn, plaintiff leased to defendant, pursuant to the ELA.  Plaintiff supplied various tools and equipment for his truck.  R&S Logistics paid for fuel, damage claims, tax return preparation, and various insurance coverages.  If defendant's personnel found that his truck lacked required equipment, defendant would provide the equipment at plaintiff's expense or prohibit plaintiff from delivering that day.  Plaintiff alleges that he had to purchase workers' compensation insurance through defendant, which deduced the weekly premiums from his paycheck.  Likewise, defendant required that plaintiff carry a mobile telephone.  Defendant provided this phone and required plaintiff to pay for the monthly costs of the phone.

Each delivery driver had to have a "helper" to assist with deliveries.  Plaintiff to pay for his own helper.  Plaintiff hired various helpers, and, during a period of prolonged injury, plaintiff hired his own replacement drivers.  Plaintiff was responsible for paying these employees.  Defendant had to approve plaintiff's choice of employees and charged plaintiff for a $200 mandatory background check of any proposed helpers.

On each workday, plaintiff arrived at the SLS facility.  He was required to attend a daily operational meeting with defendant's Location or Facility Manager.  Plaintiff also picked up his "manifest," <u>i.e.</u>, an SLS-prepared document listing the order in which plaintiff would make deliveries, based on window times chosen by Sears customer service representatives and the purchasing customers.  Plaintiff could not change the order or times of deliveries.  The order in which defendant's drivers selected their manifests depended on their performance in customer service evaluations: the best-reviewed driver picked first, and the worst-reviewed driver picked last.

Having selected a manifest, plaintiff pulled up his truck to the SLS loading dock and loaded the merchandise. During the day, plaintiff called a Sears customer service representative after each delivery to report the start and end times of the delivery. Plaintiff would also decide when and if to eat lunch and fuel his truck. After completing all deliveries, plaintiff returned to the SLS facility and submitted the manifest to defendant's representative. The truck had to be left at the warehouse overnight.

Defendant paid plaintiff $23.50 per stop. Previously, plaintiff had been paid $6.82 per stop to make deliveries for Penske. Plaintiff terminated the ITA and ELA in October 2004.

**B.     Procedure**

Plaintiff initiated this action in the Northern District of California on May 17, 2005. Defendant moved to change venue in August 2005, and that motion was granted on November 7, 2005. The transferred action arrived in the Southern District on November 14, 2005. (Doc. No. 1.) Judge Rhoades decided the motion for partial summary judgment on the FLSA claim on November 9, 2006. (Doc. No. 37.)

Defendant filed the present motion for summary judgment on October 12, 2007. (Doc. No. 59.) Plaintiff filed his opposition on December 3, 2007. (Doc. No. 65.) Defendant filed its reply on December 17, 2007. (Doc. No. 71.) The Court twice continued the oral argument on the motion. (See Doc. Nos. 70 & 73.) The Court held oral argument on May 30, 2008 and then took the matter under submission.

**SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(c), the Court must grant summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See also Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001). A fact is material if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering summary adjudication of issues does not make credibility determinations or weigh conflicting evidence, as those determinations are for the trier of fact and are inappropriate in

summary proceedings. Id. at 249. The court considers the evidence in the light most favorable to the non-moving party. Id. at 255. However, the court is not required to accept conclusory allegations, nor does the court assume the truth of legal conclusions cast in the form of factual allegations. Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). The moving party bears the initial burden of identifying the elements of the claim which "demonstrate[] absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). The burden then shifts to the non-moving party to go beyond the pleadings and establish a triable issue. Celotex, 477 U.S. at 324; Arpin, 261 F.3d at 919.

**DISCUSSION**

**A.  State-Law Claim for Overtime Pay**

Plaintiff's second cause of action alleges violations of California law pertaining to unpaid overtime and skipped rest periods and meal breaks. California Industrial Welfare Commission Order No. 9-2001 ("IWC Order") regulates wages, hours, and working conditions in the transportation industry. Its provisions on overtime pay, however, do not apply to employees whose hours of service are governed by regulations promulgated by the United States Department of Transportation ("USDOT"). See IWC Order § 3(L)(1), as codified at Cal. Code Regs. tit. 8 § 11090(3)(L)(1) (citing 49 C.F.R. §§ 395.1-.13 (2007)). A driver who "was engaged in transporting property in interstate commerce" is subject to the USDOT regulations cited in the IWC order and, therefore, "is not entitled to overtime pay in California." Watkins v. Ameripride Servs., 375 F.3d 821, 825 (9th Cir. 2004). In the prior Order granting partial summary judgment, Judge Rhoades found that, although plaintiff delivered appliances entirely within California state lines, plaintiff transported property in interstate commerce. (Doc. No. 37, at 11.) This finding, applied to the present motion, precludes plaintiff from obtaining overtime pay in California under California law. (Compl. ¶¶ 60-67.)

Therefore, the Court will grant defendant's motion for summary judgment on the second cause of action, but only as to the overtime pay allegations. Nothing in the IWC Order precludes plaintiff from pursuing their claims for skipped rest periods and meal breaks.

**B. Whether Plaintiff Was an Independent Contractor or Employee**

All of plaintiff's remaining causes of action[2] hinge on the resolution of one question: whether, as a matter of law, plaintiff was defendant's independent contractor, rather than an employee. If plaintiff was an independent contractor, all of plaintiff's remaining claims drop out.

1. Choice of Law

The parties agree, and the Court finds, that Georgia law governs the dispositive question before the Court. The ITA and ELA both contain choice-of-law clauses. (See Def. Exhibit 7 ¶ 18 & Exhibit 8 ¶ 14(b).) California courts enforce choice-of-law clauses where, inter alia, the chosen state "has a substantial relationship to the parties or the transaction." ABF Capital Corp. v. Osley, 414 F.3d 1061, 1065 (9th Cir. 2005). "A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state." Id. Defendant is incorporated in Georgia and has its principal office in the Georgian city of Marietta. (Def. Exhibit 6 ¶ 2.) Therefore, the Court enforces the parties' choice-of-law clause and applies Georgia law in resolving this dispute.

2. Analysis

In determining whether the individual is an employee or independent contractor, "'the chief test lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract.'" McLaine v. McLeod, — S.E.2d —, 2008 WL 1903335, at *3 (Ga. Ct. App. May 1, 2008) (quoting Ross v. Ninety-Two West, Ltd., 201 Ga. App. 887, 891 (Ga. Ct. App. 1991)). "If an employment contract clearly identifies a person as an independent contractor, it is presumed that such a relationship exists unless the evidence shows

---

[2] Besides the surviving portion of plaintiff's second cause of action (i.e., the missed meal breaks and rest periods), plaintiff's other state-law claims include failure to pay wages (i.e., payment for vacation, holidays, sick days, and severance), improper charges for worker's compensation insurance, and the unfair business practice of wrongfully classifying defendant's California drivers. The sixth and final cause of action is an ERISA claim for wrongful exclusion of defendant's California drivers from benefit plans, although this claim is contingent on a promised amendment to the complaint following exhaustion of administrative remedies. Such an amendment has not yet taken place.

otherwise."[3] McFann v. Sky Warriors, Inc., 268 Ga. App. 750, 760-61 (Ga. Ct. App. 2004) (emphasis added). Also, "the labeling of a person as an independent contractor in his contract does not determine the actual status of that person and other factors may negate the label." Id. at 761 (citing Doctors Hosp. of Augusta v. Bonner, 195 Ga. App. 152, 162 (Ga. Ct. App. 1990)). Further defining the right of control, Georgia courts have explained:

> The right to control the time means the employer has assumed the right to control the person's actual hours of work. The right to control the manner and method means the employer has assumed the right to tell the person how to perform all details of the job, including the tools he should use and the procedures he should follow.

Palma v. Ga. Farm Bureau Ins. Co., 270 Ga. App. 333, 334 (Ga. Ct. App. 2004) (quoting Williamson v. Coastal Physician Servs. of the Se., 251 Ga. App. 667, 668 (Ga. Ct. App. 2001)).

Here, defendant argues that plaintiff's allegations are legally and factually insufficient. Beginning with the legal arguments, defendant claims that plaintiff's allegations actually reflect control by SLS, not defendant, such that the requirements of defendant's procedures manual merely restate the requirements of defendant's agreement with SLS. (See Memo. ISO Motion, at 19; Reply, at 2-3.) For the proposition that enforcing the customer's requirements cannot transform a nominal independent contractor into employee, defendant relies on Larmon v. CCR Enterprises, 285 Ga. App. 594 (Ga. Ct. App. 2007). In Larmon, the Georgia Court of Appeal affirmed summary judgment for the defendant, adhering to the independent contractor presumption where the defendant contracted with drivers to deliver buses manufactured by a third party. 285 Ga. App. at 594, 596. Although plaintiff presented the court with evidence that defendant's contractor had to deliver the bus on a particular date, comply with governmental regulations, maintain log books, and do upkeep on the bus, the court rejected that evidence because "many of the requirements listed were not those of [the defendant] but rather those" of the government, third-party manufacturer, or purchaser. Id. at 595.

The Court does not find persuasive defendant's arguments predicated on Larmon. That

---

[3] Defendant has not cited, and the Court has not found, any authority stating the quantum of evidence that Georgia law requires to overcome this presumption. Therefore, the Court finds nothing in Georgia law that would require the Court to maintain the presumption in spite of evidence sufficient to create a triable question of fact pursuant to the FRCP 56(c) standard for summary judgment.

case was one instance where a Georgia court declined to find an employee relationship because, inter alia, some of the purported requirements actually reflected the demands of third parties. Larmon does not stand for the global proposition that employers can always "pass through" a burdensome litany of third-party requirements onto workers while never creating an employer-employee relationship. Also, Larmon involved a number of requirements associated with federal regulatory compliance. Here, nothing that defendant requires of plaintiff arises from USDOT regulations. Finally, Larmon did not involve the memorialization of the employer's requirements in a procedures manual. When the employer provides a company policy handbook to explain the "Do's and Dont's" of the job, the handbook provides evidence that the recipient is an employee, rather than an independent contractor. Davis v. Beasley Timber Co, Inc., 241 Ga. App. 706, 708 (Ga. Ct. App. 1999).

On a related note, defendant argues that its requirements, especially insistence upon the driver's adherence to the delivery schedule printed on the manifest, do not establish the requisite control because "Sears' arrangement of delivery times with its customers is a practical requirement of its business in order to deliver its products to customers' homes." (Memo. ISO Motion, at 20.) For this proposition, defendant relies on Palma, which affirmed the entry of summary judgment for the defendant insurer because the farm holding its policy employed harvest supervisors as independent contractors. 270 Ga. App. at 336. The supervisor was not an employee merely because the farm directed the supervisor when to harvest particular fields, since that requirement was a "practicality of the onion harvest." Id. Instead, the court focused on the supervisors' responsibility to hire their own workers, provide tools, and set hours. Id. More generally, defendant cites its prerogative "to take steps to ensure compliance with its contract and to monitor the results obtained thereunder." Cotton States Mut. Ins. Co. v. Kinzalow, 280 Ga. App. 397, 401 (Ga. Ct. App. 2006) (explaining that such monitoring restrictions included tracking insurance agents' sales figures, requiring agents to maintain accurate accounts, and reserving the right to inspect records).

Again, the Court does not find persuasive the argument that defendant's requirements only reflected practicalities of Sears's business or merely monitored the end results. For starters, the

Court notes that <u>Davis</u> arises in the context of a timber delivery contract, which is more factually comparable to this case than the agriculture contract in <u>Palma</u> or the insurance contract in <u>Cotton States</u>. The Georgia Court of Appeals in <u>Davis</u> found a triable issue of fact on the independent contractor question because the employer told the driver when to show up for his first load, when to stop coming back for additional loads, and where to take each load. 241 Ga. App. at 708. Furthermore, defendant restricted Mr. Ruiz's freedom in the decisions that the <u>Palma</u> supervisor made with unfettered discretion. Defendant charged Mr. Ruiz $200 for a mandatory background check of any helper candidate and had to give its final approval of the helper whom Mr. Ruiz chose to hire. (Ruiz Decla. ¶¶ 36-37.) If Mr. Ruiz's truck lacked the equipment that defendant required, defendant would provide the equipment at his expense or prevent him from making deliveries. (<u>Id.</u> ¶ 30.) And, Mr. Ruiz did not set his own hours, because defendant required him to report for work before 6 a.m. (<u>Id.</u> ¶ 20.) Defendant's requirements are more specific and detailed than the broad inspection and monitoring practices that the <u>Cotton States</u> court allowed.

Defendant's factual argument is that Mr. Ruiz's allegations do not satisfy the legal standard concerning defendant's "right to control the time, manner, and method of executing the work[.]" <u>McLaine</u>, 2008 WL 1903335 at *3. In other words, even if Mr. Ruiz alleges some kind of control, he does not allege control over the specific aspects of his work that are the focus of applicable Georgia law. The Court finds, however, enough countervailing evidence to create a triable question of fact on this issue. Mr. Ruiz's declaration explains that defendant required him to report for work before 6:00 a.m. so that he could attend a required meeting with one of defendant's managers. (Ruiz Decla. ¶¶ 20-21.) This is evidence that defendant had the right to control plaintiff's time, <u>i.e.</u>, to control plaintiff's "actual hours of work." <u>Palma</u>, 270 Ga. App. at 334.

The Ruiz Declaration and defendant's procedures manual also provide evidence of defendant's control over the manner and method of plaintiff's work, <u>i.e.</u>, "how to perform all details of the job." <u>Palma</u>, 270 Ga. App. at 334. Defendant instructed plaintiff to create and name a separate corporate entity. (Ruiz Decla. ¶¶ 18-19.) Defendant had to give its approval of any lettering and graphics on plaintiff's delivery truck. (<u>Id.</u> ¶ 27 & Def. Exhibit D § III(B).) Defendant developed a system for rating its drivers' performance, and used those ratings to dictate

the order in which plaintiff obtained his daily route assignments. (Ruiz Decla. ¶¶ 42-43 & Def. Exhibit D, at 22.) Defendant instructed plaintiff what types and colors of clothing he could wear on the job. (Def. Exhibit D, at 10.) Defendant dictated the contents of any business cards that plaintiff wished to distribute to customers. (<u>Id.</u> at 11.) Defendant instructed plaintiff to check in with Sears after each delivery, explaining, in boldface type, that "[t]his will be a point of great focus by [defendant]." (<u>Id.</u> at 6.) Defendant required plaintiff to hire a helper, had veto power over plaintiff's choice of helper(s), and expected plaintiff to pay for a background check for each helper candidate. (Ruiz Decla. ¶¶ 36-37.) Defendant expected plaintiff to return his truck to the SLS warehouse at day's end. (<u>Id.</u> ¶ 48.) These examples are representative, but not exhaustive.

Therefore, although the ITA and ELA both identify Ruiz as an independent contractor (<u>see</u> ITA ¶ 9 and ELA ¶ 2(a)), the Court finds sufficient evidence from which a reasonable jury could conclude that plaintiff has overcome the presumption of "independent contractor" status and established that he was defendant's employee. Admittedly, a reasonable jury could instead find that plaintiff was defendant's independent contractor, based on, <u>e.g.</u>, the agreements' language, plaintiff's hiring of employees, and the greater financial risks/rewards of plaintiff's position with defendant as compared to his prior employment with Penske. The opinion of defendant's expert, Mr. Robert W. Crandall, may also be relevant to that determination. (<u>See</u> Def. Exhibit 9 (Crandall expert report).) The point is that a jury must decide the issue.

Finally, the Court summarily rejects defendant's argument that plaintiff's claims are time-barred for failure to submit them to arbitration within the ITA's limitations period. "[W]here a party engages in the litigation process before seeking to enforce [its] right to arbitrate, [it] has waived that right." <u>Langfitt v. Jackson</u>, 284 Ga. App. 628, 633 (Ga. Ct. App. 2007) (citing cases involving waiver by, <u>e.g.</u>, participating in discovery, opposing motions, and requesting additional time). Applied to these facts, defendant waived its right to enforce arbitration by answering the complaint, moving for <u>pro hac vice</u> admission, and filing multiple motions.

## CONCLUSION

Because the Court has previously found that plaintiff transported property in interstate commerce, the Court **GRANTS** partial summary judgment to defendant on plaintiff's second

1 | cause of action for overtime pay pursuant to California law.  Otherwise, because of a triable
2 | question of fact as to whether plaintiff is defendant's independent contractor or employee, the
3 | Court **DENIES** defendant's motion for summary judgment on all the remaining causes of action.
4 | The parties shall jointly contact the chambers of Magistrate Judge Bencivengo within **three (3)**
5 | **days** of the date that this Order is docketed, for the purpose of rescheduling pretrial dates.

    IT IS SO ORDERED.

DATED: June 5, 2008

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge