# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO RUIZ, individually and on behalf of all others similarly situated,<br><br>                                          Plaintiff,<br>    vs.<br><br>AFFINITY LOGISTICS CORPORATION,<br><br>                                          Defendant. | CASE NO. 05CV2125 JLS (CAB)<br><br>**ORDER (1) GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION and (2) GRANTING DEFENDANT'S MOTION FOR LEAVE TO AMEND DEFENSES**<br><br>(Doc. Nos. 82 & 87) |

Presently before the Court is Fernando Ruiz's ("plaintiff") motion for class certification pursuant to Federal Rule of Civil Procedure 23 (Doc. No. 82) and Affinity Logistics Corporation's ("defendant") motion for leave to amend its affirmative defenses to add a preemption defense (Doc. No. 87). The Court certifies the class on the lone issue of whether defendant should have classified the members of the class as employees, rather than independent contractors. The Court denies class certification on all other issues in the case. The Court grants defendant leave to amend its affirmative defenses.

**FACTUAL BACKGROUND**

The Court takes the following factual summary from its June 5, 2008 Order granting in part and denying in part defendant's motion for summary judgment.[1]

---

[1] Citations to the record submitted with the summary judgment motion are omitted.

This case is a putative class action involving defendant's current and former delivery drivers who did not receive wages, overtime, and benefits to which they were allegedly entitled under federal and California law. Named plaintiff Fernando Ruiz entered the United States in 1988 and obtained permanent residency. Since 1990, Ruiz has earned a living as a truck driver making home deliveries. Before and during his employment with defendant, Ruiz delivered appliances to customers of Sears, Roebuck, & Co. ("Sears"). For nearly four years, ending in 2003, Ruiz worked as a delivery driver for Penske Logistics Corporation ("Penske"), which had the contract with Sears Logistics Services, Inc. ("SLS") to deliver appliances to Sears customers. Ruiz worked for Penske as an employee. Penske lost the SLS contract to defendant in late 2003.

Facing the loss of his job, plaintiff engaged in negotiations with defendant to do the same work on the Sears contract. Plaintiff spoke with defendant "about becoming a contractor for" defendant. Plaintiff signed the Independent Truckman's Agreement ("ITA") and Equipment Lease Agreement ("ELA") on November 9, 2003. Paragraph 9 of the ITA represented, "[t]he parties intend to create an independent contractor relationship and not an employer-employee relationship." The ELA added that plaintiff "will be acting in his own separate capacity and not as an agent, employee, partner, joint venture or associate of [defendant]. It is expressly understood and agreed that [plaintiff] is an independent contractor of [defendant] in all manners and respects." When plaintiff signed with defendant, plaintiff understood that he "w[as] going to be an independent contractor[.]"

After plaintiff signed the agreements, defendant provided a copy of its "Contractor Delivery Procedures Manual." The procedures manual provided detailed descriptions of "Basic Delivery Procedures" in sixteen different areas (e.g., handling the lists of customer orders ("manifests"), delivering merchandise, communicating with route monitors after delivery, reporting vehicle breakdowns). It also described eight "Other Requirements" (e.g., attending daily operations meetings, stocking vehicles with certain accessories, and appearance/grooming). The manual further explained the procedures for delivering certain appliances, handling claims of loss

or theft, and ways for measuring contractor quality.[2]

To work for defendant, Ruiz had to start his own business (which he named "R&S Logistics") and file a Fictitious Business Name Statement. He paid for his business license. He leased a truck from Ryder Truck Rental, Inc., which, in turn, plaintiff leased to defendant, pursuant to the ELA. Plaintiff supplied various tools and equipment for his truck. R&S Logistics paid for fuel, damage claims, tax return preparation, and various insurance coverages. If defendant's personnel found that his truck lacked required equipment, defendant would provide the equipment at plaintiff's expense or prohibit plaintiff from delivering that day. Plaintiff alleges that he had to purchase workers' compensation insurance through defendant, which deduced the weekly premiums from his paycheck. Likewise, defendant required that plaintiff carry a mobile telephone. Defendant provided this phone and required plaintiff to pay for the monthly costs of the phone.

Each delivery driver had to have a "helper" to assist with deliveries. Plaintiff paid for his own helper. Plaintiff hired various helpers, and, during a period of prolonged injury, plaintiff hired his own replacement drivers. Plaintiff was responsible for paying these employees. Defendant had to approve plaintiff's choice of employees and charged plaintiff for a $200 mandatory background check of any proposed helpers.

On each workday, plaintiff arrived at the SLS facility. He was required to attend a daily operational meeting with defendant's Location or Facility Manager. Plaintiff also picked up his "manifest," i.e., an SLS-prepared document listing the order in which plaintiff would make deliveries, based on window times chosen by Sears customer service representatives and the purchasing customers. Plaintiff could not change the order or times of deliveries. The order in which defendant's drivers selected their manifests depended on their performance in customer

---

[2] An additional fact relevant to the present motion for class certification is that defendant had other customers besides SLS—namely, J.C. Penney, Home Depot EXPO Design, Breuners, and Wickes. Plaintiff seeks to have drivers for all of defendant's customers included in the proposed class. During discovery, plaintiff obtained manuals for J.C. Penney and Home Depot EXPO Design. (Osborn Reply Decla., Exhibits B & C.) As compared to the SLS manual, the J.C. Penney and Home Depot EXPO manuals are highly similar in their organization and, in some places, contain virtually identical content. Plaintiff did not obtain discovery manuals for Breuners and Wickes during discovery. (Pl. Reply ISO Class Cert., at 2 n.1.)

1  service evaluations: the best-reviewed driver picked first, and the worst-reviewed driver picked
2  last.
3        Having selected a manifest, plaintiff pulled up his truck to the SLS loading dock and
4  loaded the merchandise.  During the day, plaintiff called a Sears customer service representative
5  after each delivery to report the start and end times of the delivery.  Plaintiff would also decide
6  when and if to eat lunch and fuel his truck.  After completing all deliveries, plaintiff returned to the
7  SLS facility and submitted the manifest to defendant's representative.  The truck had to be left at
8  the warehouse overnight.
9        Defendant paid plaintiff $23.50 per stop.  Previously, plaintiff had been paid $6.82 per stop
10 to make deliveries for Penske.  Plaintiff terminated the ITA and ELA in October 2004.

**MOTION FOR CLASS CERTIFICATION**

**A.     Procedure**

13       Plaintiff filed his motion for class certification on July 14, 2008.  (Doc. No. 82.)  After the
14 Court denied defendant's motion for reconsideration of the Court's summary judgment Order
15 (Doc. No. 95), defendant filed its opposition to class certification on November 26, 2008.  (Doc.
16 No. 97.)  Plaintiff replied on December 4, 2008.  (Doc. No. 99.)  The Court held oral argument on
17 the motion on December 16, 2008 and then took the matter under submission.  On December 17,
18 2008, with leave of the Court, plaintiff electronically filed the exhibits that his counsel had
19 presented in poster form during the oral argument.  (Doc. No. 104.)

**B.     Legal Standard**

21       Motions for class certification proceed under Rule 23(a) of the Federal Rules of Civil
22 Procedure.  Rule 23(a) provides four prerequisites to a class action: (1) the class is so numerous
23 that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact
24 common to the class ("commonality"); (3) the claims or defenses of the representative parties are
25 typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will
26 fairly and adequately protect the interests of the class ("adequate representation").  Fed. R. Civ. P.
27 23(a).
28       A proposed class must also satisfy one of the subdivisions of Rule 23(b).  Here, Mr. Ruiz

seeks to proceed under Rule 23(b)(3), which requires that "the court find[] that the [common questions] predominate over any questions affecting only individual members ["predominance"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["superiority"]." The relevant factors in this inquiry include the class members' interest in individually controlling the litigation, other litigation already commenced, the desirability (or not) of consolidating the litigation in this forum, and problems of manageability. Id. 23(b)(3)(A)-(D).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (internal quotations omitted). As the party seeking to certify a class, plaintiffs bear the burden of demonstrating that they satisfy the elements of Rule 23. Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977); W. States Wholesale, Inc. v. Synthetic Indus., Inc., 206 F.R.D. 271, 274 (C.D. Cal. 2002). The court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992). However, a weighing of competing evidence is inappropriate at this stage of the litigation. Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 605 (C.D. Cal. 2005). Finally, on a motion for class certification, the court is "bound to take the substantive allegations of the complaint as true." Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975); Kamar v. Radio Shack Corp., — F.R.D. —, 2008 WL 4552953 (C.D. Cal. Oct. 8, 2008).

Rule 23(c)(4) directs that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Certifying a class to determine the defendant's liability, while leaving the class members to pursue their individual damages claims, is a common example of partial certification. See Reeb v. Ohio Dep't of Rehab. & Corr., 435 F.3d 639, 658 (6th Cir. 2006); Amone v. Aveiro, 226 F.R.D. 677, 687 n.8 (D. Haw. 2005); cf. Chiang v. Veneman, 385 F.3d 256, 267 (3d Cir. 2004) ("courts commonly use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual

1  adjudication—or, perhaps more realistically, settlement").

2  **C.    Discussion**

3  As originally stated in the complaint, plaintiff defines the proposed class to include the

4  following: "All current and former delivery drivers who made home deliveries for Affinity

5  Logistics Corporation within the State of California at any time between May 18, 2001 and the

6  date of the resolution of this Complaint." (Compl. ¶ 5; Pl. Memo. ISO Class Cert., at 2.)

7  Defendant does not contest that plaintiff has satisfied the following prerequisites to class

8  certification:

9  —The 236 delivery drivers in this putative class satisfy the numerosity requirement.

10 —The action raises questions common to the class, e.g., whether the putative class members were

11 misclassified as independent contractors. See Breeden v. Benchmark Lending Group, Inc., 229

12 F.R.D. 623, 629 (N.D. Cal. 2005) (certifying class of loan officers treated as "exempt" under state

13 and federal laws, with commonality requirement satisfied because all class members were so

14 categorized).

15 —Mr. Ruiz is an adequate representative of the class, which means that his lawyers are competent

16 and qualified, and that his interests are not antagonistic with the absent class members. Lerwill v.

17 Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978); Tanne v. Autobytel, Inc., 226

18 F.R.D. 659, 667 (C.D. Cal. 2005).

19 Defendant's makes two objections to class certification: (1) whether Mr. Ruiz's claims are

20 typical of the class claims and (2) whether the common issues predominate over the individual

21 issues in this action. The Court considers these objections individually.

22      1.    Typicality

23 The Ninth Circuit has explained, "representative claims are 'typical' if they are reasonably

24 co-extensive with those of absent class members; they need not be substantially identical." Staton

25 v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019

26 (9th Cir. 1998). Here, defendant makes three distinct arguments against the typicality of plaintiff's

27 claims.

28 First, plaintiff made deliveries for Sears only, but defendant had drivers making deliveries

1  for defendant's other customers: J.C. Penney, Home Depot EXPO Design, Breuners, and Wickes.
2  Defendant faults plaintiff for failing to carry his burden of showing that, on the issue of
3  reclassification, his relationship with defendant is sufficiently similar to the relationship that
4  drivers for other customers have with defendant.

5        Second, plaintiff relied on other drivers he hired to make his deliveries for eight of the
6  eleven months that he was under contract with (or employed by) defendant.  Therefore, defendant
7  argues that plaintiff's experience is only typical of the six drivers who owned/leased more than
8  one delivery truck or otherwise did not perform the actual deliveries themselves.  Plaintiff's
9  experience is allegedly not typical of the putative class members who made their own deliveries.
10 Plaintiff's employment of others may uniquely undermine his claim to be an "employee".  See
11 Hanon, 976 F.2d at 508-09 (affirming denial of class certification motion, as lead plaintiff was not
12 typical because his unique experience in other securities litigation "require[d] him to meet
13 defenses that are not typical which may be raised against other members of the proposed class");
14 Alaska v. Suburban Propane Gas Corp., 123 F.3d 1317, 1321 (9th Cir. 1997) ("when named
15 plaintiffs are subject to unique defenses which could skew the focus of the litigation, district courts
16 properly exercise their discretion in denying class certification").

17       Third, as the Court addressed in the motions for summary judgment and reconsideration,
18 Georgia law imposes a presumption of independent contractor status.  See Larmon v. CCR Enters.,
19 647 S.E.2d 306, 307 (Ga. Ct. App. 2007).  Overcoming that presumption requires evidence "the
20 employer has assumed the right to control the time, manner, and method of executing the work."
21 Palma v. Ga. Farm Bureau Ins. Co., 606 S.E.2d 341, 344 (Ga. Ct. App. 2004).  Defendant argues
22 that plaintiff cannot overcome the presumption with proof of control that is common to the class,
23 whether through the imposition of uniform policies applicable to all drivers or plaintiff's service of
24 SLS in the same way that putative class members served other Affinity customers.  As specific
25 examples, defendant cites the pay differentials received by drivers who delivered to different
26 customers, and the skill sets required for the various positions (e.g., whether the driver had to
27 make appliance deliveries).

28       Plaintiff contends that "the ultimate issue being adjudicated" is whether the class members

should have been classified as employees, rather than independent contractors. (Pl. Reply ISO Class Cert., at 7:19.) Concerning this issue of misclassification, the Court is not persuaded by any of defendant's three arguments against typicality. Plaintiff has carried his burden of establishing the similarities in the class members' relationship with each of defendant's customers by pointing to two pieces of evidence. The delivery manuals for SLS, J.C. Penney, and Home Depot Expo establish similarities in defendant's written policies for drivers who delivered to any of these three customers. See Estrada v. FedEx Ground Package Sys., Inc., 154 Cal. App. 4th 1, 13-14 (Cal. Ct. App. 2007) (rejecting FedEx's argument that the trial court erred by certifying a class of drivers based on terms of a written Operating Agreement, where anecdotal evidence of individual violations "was admitted to show FedEx's power to interpret the Operating Agreement and was relevant to the class a whole"). In addition, plaintiff has emphasized eighteen requirements that defendant imposed on all drivers, regardless of the customers they serviced. (See Pl. Reply ISO Class Cert., at 3-4, & Doc. No. 104, Exhibit 2.) These requirements make it appropriate to adjudicate the misclassification issue on a classwide basis with respect to drivers for all of defendant's customers.[3]

A closer review of the facts belies defendant's second argument that plaintiff's hiring of other drivers presents a unique defense to his claim. Plaintiff made his own deliveries for three months while working for defendant. This three-month period makes plaintiff typical of those class members who made their own deliveries. Furthermore, the hiring of other drivers for the remaining eight months does not defeat the typicality of plaintiff's claim because all drivers hired their own helpers. Whether plaintiff only hired a helper or also hired a driver to make the actual deliveries, plaintiff hired others to work for him. Therefore, plaintiff's claim is typical of a class

---

[3] The uniformity of these requirements on all drivers makes it unnecessary for the Court to entertain the suggestion of plaintiff's counsel at oral argument that the Court solve typicality concerns by creating sub-classes for the five different groups of drivers, each representing one of defendant's clients. Even if the Court had found plaintiff's claims not to be typical of the entire class, the law would not allow the Court to create subclasses sua sponte, for plaintiffs "bear the burden of establishing appropriate subclasses and demonstrating that each subclass meets the Rule 23 requirements. . . . The Plaintiffs must come forward with the exact definition of each subclass, its representatives, and the reasons each subclass meets the prerequisites of Rule 23(a) and (b)." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001) (quoting In re Teletronics Pacing Sys., Inc., 168 F.R.D. 203, 221 (S.D. Ohio 1996)).

1  of drivers who all hired their own employee(s).

2  Finally, the Court is not persuaded by defendant's third argument concerning the absence
3  of common proof to overcome the "presumption" of Georgia law. Defendant fails to explain why
4  its specific examples of differences in drivers' pay scales and skill sets have any relevance to the
5  typicality of plaintiff's claims. As for common proof, the Court refers to its analysis <u>supra</u> of the
6  similar delivery manuals and the eighteen requirements that defendant imposed on all drivers.[4]

7  For all these reasons, the Court finds that plaintiff is typical of the class on the issue of
8  whether defendant improperly treated class members as independent contractors, rather than
9  employees.

10  2.   Predominance

11  For plaintiff, this case is a class action because of the common issue of misclassification.
12  <u>I.e.</u>, what takes precedence here is whether defendant should have classified delivery drivers as
13  employees. Defendant rebuts that, even if it should have classified the drivers as employees, this
14  finding is only the beginning of the inquiry, and the remaining elements of each of plaintiff's
15  causes of action present issues wherein individual questions predominate over the common
16  questions. At this point in the litigation, after two rounds of summary judgment motions,
17  plaintiff's remaining causes of action allege unpaid meal periods and rest breaks; denial of
18  vacation pay, holiday pay, etc.; inadequate expense reimbursement; and unfair business practices.
19  With respect to each of plaintiff's four causes of action, the Court agrees with defendant and finds
20  these claims unsuitable for classwide adjudication.

21  *a.   Meals and Rest Breaks*

22  Recent, published opinions from district courts in California have denied class certification
23  on meal period/rest break claims where the defendant did not have a uniform policy on these
24  matters. <u>See</u> <u>Brown v. Fed. Exp. Corp.</u>, 249 F.R.D. 580 (C.D. Cal. 2008) (denying certification of
25  claim for missed meal periods and rest breaks because California law only required the employer

---

[4] In addition to the substantive shortcomings of defendant's argument, defendant fails to explain why the Court should even consider Georgia law, as the remainder of defendant's opposition brief—especially its discussion of why common issues do not predominate in plaintiff's causes of action—cites California law.

1  to make such breaks available to the class, the class members were dispersed across 114 work
2  sites, and plaintiff submitted no form of classwide proof to show how defendant's policies
3  somehow pressured class members not to take the breaks); <u>Kenny v. Supercuts, Inc.</u>, 252 F.R.D.
4  641 (N.D. Cal. 2008) (denying class certification because defendant's written policy complied
5  with the law and individualized trial would be required to establish why any plaintiff did not take a
6  meal break on any given day); <u>Blackwell v. SkyWest Airlines, Inc.</u>, 245 F.R.D. 453 (S.D. Cal.
7  2007) (Sabraw, J.) (refusing to certify class because of the need for "extensive individualized
8  inquiries" on meal periods, variance in policy across the different airports serviced by the
9  defendant regional airline, and the presence in the class of those who disobeyed supervisors'
10 instructions to take meal periods or waived their meal period rights).

11       Applying this line of precedent, the Court cannot certify the class on plaintiff's cause of
12 action for missed meal and rest periods. Trial of that claim would necessarily require
13 individualized inquiries as to whether absent class members actually received the periods.
14 Although plaintiff cites to the depositions of various drivers who testified that they did not obtain
15 meal breaks, plaintiff fails to show what common proof is available to litigate this claim.
16 Plaintiff's citation to a passing reference in defendant's reply brief on the separate motion for
17 leave to amend affirmative defenses is not sufficient. Plaintiff tries to distinguish the authorities
18 cited <u>supra</u> as cases where the plaintiff proposed a meal and rest break class, rather than the class
19 of improperly classified employees that plaintiff presents here. This argument falsely presumes
20 that, if the class prevails on the misclassification issue, they will automatically prevail on their
21 meal/rest period claim. Even with a class certified on the misclassification issue, the individual
22 issues associated with establishing liability for missed meal and rest periods predominate.

23       b.   *Vacation Pay et al.*

24       Under California law, an employer does not have to provide the benefits which plaintiff
25 seeks under this cause of action, and an employee may claim them only if there is an underlying
26 contract. <u>See</u>, e.g., Cal. Labor Code § 227.3 ("whenever a contract of employment or employer
27 policy provides for paid vacations"); <u>Henry v. Amrol, Inc.</u>, 222 Cal. App. 3d Supp. 1, 5 (Cal.
28 Super. Ct. 1990) (California precedent "does not require that an employer include a paid vacation

as a portion of his employees' compensation"). Here, defendant argues that the putative class of drivers cannot recover for vacation pay and other employee benefits because (1) the ITA and ELA did not provide such benefits and (2) plaintiff cannot submit classwide proof of some other agreement between the drivers and defendant that offered those benefits.

At oral argument, plaintiff's counsel conceded that his theory of recovery on this cause of action is essentially equitable. In other words, plaintiff presents no authority for the proposition that employees misclassified as independent contractors are automatically entitled to employee benefits, even in the absence of a contractual right. At trial, plaintiff would argue to the jury that the class members should receive the benefits that defendant provided to those individuals who were classified as defendant's employees, per defendant's employee handbook. (Osborn Reply Decla., Exhibit K.) In plaintiff's own words, "the benefits provided to these employees, whom [plaintiff's attorneys] suspect did not have employment contracts with [defendant], should have been offered to the wrongly classified drivers." (Pl. Reply ISO Class Cert., at 8:10-12.) Plaintiff's theory manifestly depends on speculation regarding the absence of contractual agreements between defendant and those whom defendant classified as its employees. The Court declines to allow plaintiff to use such speculation to carry his burden of establishing predominance. The alternative to classwide proof—individualized inquiry into the terms of each driver's agreement with the defendant—is unsuitable for classwide adjudication. Again, individual issues predominate in this claim.

     *c. Expense Reimbursement*

"An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Labor Code § 2802. Whether expenditures were "necessary" is a fact-intensive "inquiry into what was reasonable under the circumstances." Grissom v. Vons Cos., Inc., 1 Cal. App. 4th 52, 58 (Cal. Ct. App. 1991). The California Supreme Court has held that an employer may satisfy its reimbursement obligations "by increases in base salary or commission rates", as long as the employer using this method "also communicate[s] to its employees the method or basis for apportioning any increase in compensation between compensation for labor performed and

1  business expense reimbursement." Gattuso v. Harte-Hanks Shoppers, Inc., 42 Cal. 4th 554, 574
2  (Cal. 2007). Defendant argues the expense reimbursement claim is inappropriate for classwide
3  adjudication because the Court will need to conduct individualized factual inquiries into (1) the
4  reasonability of each driver's expenses, and (2) the adequacy of the higher compensation to cover
5  those expenses. See Gattuso, 42 Cal. 4th at 570 (allowing lump-sum reimbursement for necessary
6  expenditures, "provided that the amount paid is sufficient to provide full reimbursement for actual
7  expenses necessarily incurred"). Because of the difference in expenses incurred across the class,
8  reasonability of those expenses, and defendant's compensation of those drivers,[5] defendant asserts
9  that plaintiff could not prove his claim without calling each absent class member to the stand.

10  The Court finds defendant's argument to be consistent with the California Supreme Court's
11  recent pronouncement in Gattuso. Although the California Superior Court and Court of Appeal
12  had both denied class certification in that case, the California Supreme Court remanded because
13  the class certification inquiry should have been organized into three questions: (1) whether the
14  defendant reimbursed for necessary expenses by paying higher salaries, (2) whether the defendant
15  apportioned the higher payments between wages and reimbursement, and (3) whether the amount
16  for reimbursement was "sufficient to fully reimburse the employees for the . . . expenses they
17  reasonably and necessarily incurred". 42 Cal. 4th at 576. At a minimum, the third prong of the
18  analysis would require case-by-case analysis where common questions do not predominate over
19  individual questions. Plaintiff has not shown that expenses were in the same ballpark across the
20  class, regardless of the customer for whom each driver delivered. Because at least five different
21  customers are involved, the determination of whether the reimbursement amount was sufficient
22  would require the Court to delve into five factual scenarios, if not more.

23          *d.*     *Unfair Business Practices*

24  Plaintiff argues the UBPA claim is appropriate for classwide adjudication because "to state
25  a claim under the act[,] one need not plead and prove the elements of a tort. Instead one need only

26  _____

27  [5] Here, the unequal pay for drivers who serviced different Affinity customers would be
relevant, as contrasted with its irrelevance to the typicality inquiry. Because different drivers were
28  not paid the same, the Court would have to look to each driver's salary to determine whether
defendant adequately compensated each driver for the reasonable expenses actually incurred.

show that members of the public are likely to be deceived." <u>Bank of the West v. Superior Court</u>, 2 Cal. 4th 1254, 1267 (Cal. 1992) (internal quotations omitted).  However, as defendant points out, plaintiff's UBPA claim is essentially derivative not merely of the misclassification, but also of the other causes of action.  <u>E.g.</u>, defendant's conduct was "unfair" because defendant refused to compensate for missed meal periods and rest breaks.  Because those underlying causes of action are not appropriate for classwide adjudication, the Court finds that the UBPA claim also should not be adjudicated on a classwide basis.

## MOTION FOR LEAVE TO AMEND AFFIRMATIVE DEFENSES

**A.  Procedure**

Defendant filed its motion to amend affirmative defenses on October 21, 2008.  (Doc. No. 86.)  Plaintiff filed his opposition on November 25, 2008.  (Doc. No. 96.)  Defendant replied on December 4, 2008.  (Doc. No. 98.)  The matter was taken under submission after the December 16, 2008 motion hearing.

**B.  Legal Standard**

Once the district court has entered a scheduling order with a timetable for amending pleadings, the standards of FRCP 16 govern the motion to amend.  <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 607 (9th Cir. 1992); <u>Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC</u>, 2009 WL 35470 (S.D. Cal. Jan. 5, 2009).  "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment.  The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  <u>Johnson</u>, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 Advisory Committee Notes (1983 amendment)).

If "good cause" is established, the party seeking amendment must then demonstrate that leave to amend is proper under FRCP 15.  <u>Id.</u> at 609; <u>Esteem v. City of Pasadena</u>, 2007 WL 4270360, at *13 (C.D. Cal. Sept. 11, 2007); <u>Forstmann v. Culp</u>, 114 F.R.D. 83, 85 (M.D.N.C. 1987). "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a); <u>see</u> <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990) (amendment

policy "to be applied with extreme liberality"); cf. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (explaining that liberality of amendment is qualified by, inter alia, the requirement that the amendment "does not constitute an exercise in futility").

**C.     Discussion**

Defendant's motion seeks to add the following affirmative defense:

> Some or all of Plaintiff's claims are barred to the extent those claims are preempted by federal statutes and regulations applicable to interstate motor carriers and their drivers in violation of the Supremacy Clause of the U.S. Constitution and are therefore a burden on interstate commerce in violation of the Commerce Clause of the U.S. Constitution.

(Motion ¶ 12.)  Defendant grounds its motion to amend in three sources of legal authority: (1) the Supreme Court's February 20, 2008 opinion in Rowe v. N.H. Motor Transp. Ass'n, — U.S. —, 128 S.Ct. 989 (2008), which held that the Federal Aviation Administration Authorization Act preempted Maine laws concerning requirements imposed on Maine-licensed tobacco shippers; (2) a new final rule concerning the hours-of-service regulations on interstate drivers, promulgated by the Federal Motor Carrier Safety Administration of the Department of Transportation, and scheduled to become final on December 11, 2008; and (3) the Third Circuit's September 9, 2008 decision in Umland v. PLANCO Financial Services, Inc., 542 F.3d 59 (3d Cir. 2008), which held that IRS regulations preempted state-law claims for the overpayment of taxes due under the Self-Employment Contributions Act resulting from the plaintiff's misclassification as an independent contractor. Defendant concedes that the Case Management Order set a November 13, 2006 deadline for filing amendments to the pleadings. (Def. Reply ISO Amend., at 2.)

The Court finds that defendant has shown "good cause" to amend, thus satisfying FRCP 16(b)(4).  Other district courts have granted leave to amend based on new legal authority decided after the time for amendment had expired. E.g., Hood v. Hartford Life & Accident Ins. Co., 567 F. Supp. 2d 1221, 1225-26 (E.D. Cal. 2008); Senich v. American-Republican, Inc., 215 F.R.D. 40, 43-46 (D. Conn. 2003).  Here, defendant's proposed preemption defense relies entirely on two cases decided in 2008, and an administrative rule finalized in 2008.  Although plaintiff objects that the Supreme Court decided Rowe in February 2008, approximately eight months prior to defendant's motion, such a delay does not demonstrate a lack of diligence, when the Court

considers the litigation history.  At the time the Supreme Court decided Rowe, the parties had completed briefing on defendant's motion for summary judgment and were awaiting oral argument.  If the Court had granted summary judgment, defendant would have not needed to direct the Court's attention to Rowe.  After the Court denied the summary judgment motion in relevant part, defendant elected to file a motion for reconsideration.  Defendant moved to amend its affirmative defenses less than a week after the conclusion of briefing on the motion for reconsideration.  Given that the United States Supreme Court decided Rowe, the Court declines to adopt plaintiff's characterization that "the opinion does not create new law." (Pl. Opp. to Amend., at 4.)  The Court finds that defendant acted with the requisite amount of diligence.

Even if "good cause" exists, plaintiff contends that leave to amend should not be granted pursuant to FRCP 15(a) because defendant will not prevail in establishing preemption.  The Court agrees with defendants that such arguments "appear to be asserted to demonstrate that [defendant's] proposed amendment would be futile." (Def. Reply ISO Amend., at 6.)  According to the Ninth Circuit, "'a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient . . . defense.'" Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1393 (9th Cir. 1997) (quoting Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)).  At this point, the Court declines to find that the preemption defense would be futile.

## CONCLUSION

The Court **GRANTS IN PART** plaintiff's motion for FRCP 23(b)(3) class certification.  Pursuant to Rule 23(c)(1)(B), the Court hereby

—**DEFINES** the class to include all current and former delivery drivers who made home deliveries for Affinity Logistics Corporation within the State of California at any time between May 18, 2001 and the date of the resolution of this Complaint;

—**DEFINES** the class issue to be whether defendant should have classified the class members as employees, rather than independent contractors;

—**APPOINTS** the lead plaintiff's counsel of record—Beatie and Osborn LLP and Law Offices of Elic Anbar—as class counsel.

1  The Court otherwise **DENIES** plaintiff's motion for class certification on all other issues.

2  Within fourteen (14) days of this Order, plaintiff's counsel **SHALL LODGE** with the
3  Court a Proposed Notice to the class members, pursuant to FRCP 23(c)(2)(B).

4  Because the Court finds good cause to modify the scheduling order and justice so requires,
5  the Court **GRANTS** defendant's motion for leave to amend its affirmative defenses.  Defendant
6  **SHALL FILE** its amended answer, with the additional affirmative defense of preemption, within
7  seven (7) days of this Order.

8  IT IS SO ORDERED.

9  DATED: January 28, 2009

10  *Janis L. Sammartino*
    Honorable Janis L. Sammartino
    United States District Judge