FILED

2016 FEB 22 PM 1:42

[court stamp]

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO RUIZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>XPO LAST MILE, INC., formerly AFFINITY LOGISTICS CORP.,<br><br>Defendant. | Case No.: 05cv2125-JLS(KSC)<br><br>ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE [Doc. No. 275] |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute. [Doc. No. 275.] In the Joint Motion, plaintiff seeks an order compelling defendant to produce documents in response to Document Request Nos. 1, 2, and 4. Specifically, for all class members, plaintiff seeks production of the following documents for the time period May 2001 through 2008: (1) Settlement Statements for all class members; (2) manifests, activity reports, time logs, or similar documents that show the work schedules for class members; and (3) Load Out/Pay Reports for all class members and an Excel spreadsheet with the information identified on the daily Load Out/Pay Reports.

/ / /

## *Background*

Plaintiff's Class Action Complaint was filed on behalf of all current and former delivery drivers of Affinity Logistics Corporation ("Affinity") in the State of California since May 2001. [Doc. No. 1, at pp. 14-15.] The Complaint alleges that Affinity, a Georgia corporation, misclassified delivery drivers as "independent contractors" rather than employees under California law and violated California's wage and hour laws. [Doc. No. 1, at pp. 14-15.]

The Court was recently advised that Affinity merged into CRT Corporation. [Doc. No. 288, at p. 1.] Thereafter, CRT Corporation changed its name twice and is now called XPO Last Mile, Inc. [Doc. No. 288, at p. 1.] The District Court recently directed the Clerk of the Court to substitute XPO Last Mile, Inc. as the sole defendant in this action in place of Affinity. [Doc. No. 288, at p. 3.]

On January 28, 2009, the District Court issued an Order Granting In Part and Denying In Part Plaintiff's Motion for Class Certification. [Doc. No. 105, at p. 1.] In this Order, the District Court defined the class to include "all current and former delivery drivers who made home deliveries for [Affinity] within the State of California at any time between May 18, 2001 and the date of the resolution of [plaintiff's] Complaint." [Doc. No. 105, at p. 15.] However, the District Court denied plaintiff's Motion for Class Certification as to all other issues. [Doc. No. 105, at p. 16.]

After a trial on the merits, the District Court found in favor of Affinity, concluding that plaintiff did not meet his burden of establishing that the drivers were misclassified as independent contractors under Georgia law. [Doc. No. 186, at pp. 25-26.]

On appeal, plaintiff argued that the District Court erroneously applied Georgia law. On March 28, 2012, the Ninth Circuit reversed and remanded, holding "that the parties' choice of Georgia law is unenforceable in California" and that "the law of California applies . . . to determine whether the drivers are employees or independent contractors." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1325 (9th Cir. 2012). [*See also* Doc. No. 203, at p. 12.] On remand, the District Court concluded that the drivers were independent

contractors under California law. [Doc. No. 216, at p. 21.] However, in a second opinion filed on June 16, 2014, the Ninth Circuit reversed and remanded, concluding that the drivers were employees rather than independent contractors under California law. *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1105 (9th Cir. 2014). [*See also* Doc. No. 245, at p. 25.]

Next, the District Court concluded plaintiff could file a renewed Motion for Class Certification. [Doc. No. 256, at p. 3.] On February 1, 2016, the District Court issued an Order Granting In Part and Denying In Part Plaintiff's Motion for Class Certification. [Doc. No. 289, at p. 1.] In this Order, the District Court certified a class for the purpose of determining defendant's liability as to plaintiff's meal and rest break claims and plaintiff's reimbursement claims. [Doc. No. 289, at p. 23.] The class is defined as "all current and former delivery drivers who made home deliveries for [Affinity] within the State of California at any time between May 18, 2001 and the date of the resolution of this Complaint." [Doc. No. 289, at p. 23.]

With respect to the meal and rest break claims, the District Court indicated in its Order of February 1, 2016 that the common issue to be resolved for the class is whether Affinity structured its business in a way that gave rise to an unofficial policy of not providing breaks or created a work environment in which it was difficult for the Drivers to take breaks required by California law." [Doc. No. 289, at p. 13.] With respect to plaintiff's reimbursement claim, the District Court identified two issues common to the class: (1) whether Affinity "had a practice or policy of reimbursing Drivers by paying them a higher salary;" and (2) whether Affinity "had a legally satisfactory method to apportion the enhanced compensation payments." [Doc. No. 289, at pp. 21-22.] If these two claims fail, the District Court indicated it would be necessary for a trier of fact to determine whether the lump sum being paid to Drivers was sufficient to cover their expenses, and this may or may not be an issue that can be decided on a class-wide basis. [Doc. No. 289, at p. 21.]

///

## *Discussion*

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed.R.Civ.P. 26(b)(1).

Defendant does not dispute the relevance of the documents and information plaintiff is pursuing in response to Request Nos. 1, 2, and 4. Particularly given the District Court's recent Order Granting in Part and Denying in Part Plaintiff's Motion for Class Certification [Doc. No. 289], it is undisputed that Request Nos. 1, 2, and 4 seek production of documents that are highly relevant to the subject matter of the action.

***Request No. 1*** seeks "[a]ny and all 'Settlement Statements,' 'pay summary' documents, and/or other statements showing (i) the specific expenses deducted from each Driver's pay on a weekly or bi-weekly basis and (ii) the amount of those deductions." [Doc. No. 275, at p. 3.] In support of their request for an order compelling defendant to produce responsive documents, plaintiff submitted: (1) a Declaration signed by Charles T. Hitt, who was Affinity's chief operating officer from January 1, 2001 until the summer of 2007, and (2) an excerpt from Mr. Hitt's deposition. Mr. Hitt's Declaration states that at the end of each pay period Affinity provided each of its drivers with a "Settlement Statement" which was a "detailed statement showing the items and amounts that [were] deducted from their compensation." [Doc. No. 275-1, at pp. 1-6 (Exh. A, C.T. Hitt Decl.); Doc. No. 275, at p. 3.] In his deposition, Mr. Hitt testified that settlement records for individual drivers were kept locally where the driver performed daily work and the information was then "transferred electronically to the corporate office in Marietta." [Doc. No. 275-3, at pp. 2-3 (Exh. C, C.T. Hitt Depo.).]

4

1  Defendant did produce documents in response to Request No. 1. However, these
2  documents are non-responsive in that Request No. 1 specifically seeks production of
3  documents showing expenses and deductions on a weekly or bi-weekly basis, and the
4  documents produced by defendant only show this information on a yearly basis.
5  Defendant produced year end or "Week 52 Master Control Reports" for the years 2005,
6  2006, 2007, and part of 2008, and Form 1099s for the years 2005, 2006, 2007, and 2008.
7  Defendant also indicated that it was unable to locate documents going back to May 2001
8  but would continue to search for them. [Doc. No. 275, at pp. 3-6.]

9  Defendant has represented that it does have the information plaintiff seeks in
10 Request No. 1 showing expenses and deductions on a weekly or bi-weekly basis for the
11 time period in question. [Doc. No. 275, at p. 6; Doc. No. 275-8, at p. 3.] However,
12 defendant has also represented that it would cost $70,000 or $100,000 to produce this
13 information. According to defendant, "[t]he cost related to producing the weekly
14 information is a result of the manner in which the information was kept in the ordinary
15 course of business. Specifically, the records include the personal information of class
16 members and non-class members alike on the same pages. As a result, the extraction
17 required to produce the information as it was kept in the ordinary course of business
18 while protecting the personal information of individuals not involved in this suit would
19 involve both costly digital searching done by an outside vendor and hours of manual
20 work." [Doc. No. 275-8, at p. 4.] Defendant offered to produce the information if the
21 parties could agree on a cost-sharing arrangement. [Doc. No. 275-8, at p. 3.]

22 Based on the information provided by defendant, it appears that the major expense
23 associated with producing a full and complete response to Request No. 1 is the cost of
24 manually redacting personal information for non-class members. However, without
25 more, it appears that the expense of redacting this information could be avoided with a
26 suitable protective order designed to protect the privacy of non-parties. Accordingly, the
27 Court finds that plaintiff is entitled to an order compelling a full and complete response to
28 Request No. 1, subject to a suitable protective order to be drafted by the parties and

presented to the Court. In addition, to the extent any of the requested documents or information cannot be located back to May 2001, defendant must provide plaintiff with a detailed declaration signed under penalty of perjury by Affinity's most knowledgeable representative. The declaration must provide a complete explanation as to why responsive documents or information cannot be located and outline all steps taken to make this determination.

***Request No. 2*** seeks "[a]ny and all 'manifests,' activity logs,' 'activity reports,' 'time logs,' or similar documents that show the work schedule of each Driver and the hours worked by each Driver." [Doc. No. 275, at p. 7.] Defendant has not produced any responsive documents for two reasons. First, defendant has represented that despite "diligent efforts" it has not been able to locate any documents responsive to this request. [Doc. No. 275, at p. 7, 9.] However, plaintiff submitted evidence indicating that defendant kept responsive documents in the normal course of its business. In this regard, plaintiff cites the following testimony from the deposition of Affinity's former director of operations:

> Q   Aside from this summary of the settlement statement that we're looking at here, and the individual settlement statements that I think you acknowledged earlier exists for each contractor, are there any other payroll or deduction-type documents that exist with respect to the contractors?
>
> A   There is a document that's utilized to track the contractors' settlement earnings prior to them being inputted into the medium where the actual contractor receives his settlement earnings.
>
> Q   What is that document called?
>
> A   It's a proprietary Affinity program that tracks the contractor's manifest and what he's done through the day to generate his earnings.
>
> Q   I'll tell you that I've seen a document from [plaintiff] that lists the number of stops that he made on a particular day, and then I think it covers the number of stops, then, for the whole week – and if I'm not mistaken, there's some more information on that document. Is that the document that you're referring to?

| | |
|---|---|
| A | Correct. |
| Q | Does that document have a name? You indicated it's generated through proprietary software, but do you call it anything? |
| A | Yes. |
| Q | What do you call that? |
| A | An activity report. |
| Q | Activity reports are generated on a weekly basis, correct? |
| A | Yes. |

[Doc. No. 275-6, at pp. 1-4 (J. Harris, Depo Tr.).]

Based on the information provided thus far, it is unclear why defendant has not produced activity reports for the time period in question. Therefore, the Court finds that plaintiff is entitled to an order compelling defendant to produce these activity reports. In addition, to the extent defendant is unable to locate any of these documents, the Court finds that plaintiff is entitled to a detailed, explanatory declaration signed under penalty of perjury by Affinity's most knowledgeable representative. The declaration must provide a complete explanation as to why activity reports could not be located and must also outline all steps taken to make this determination.

Second, defendant has represented that manifests belong to its customers and are not in defendant's care, custody, or control. [Doc. No. 274, at p. 8.] As a result, it is apparently defendant's position that plaintiff must pursue these documents by way of subpoenas *duces tecum* served directly on Affinity's customers. [Doc. No. 275, at p. 8; Doc. No. 275-8, at p. 5.] In this regard, defendant has represented that plaintiff has served subpoenas *duces tecum* on several of its customers. [Doc. No. 275.] However, this does not end the Court's inquiry. Particularly when a third party is located out of this District, the Court is aware that pursuing documents by way of a subpoena *duces tecum*

can not only be time-consuming and expensive but can also result in unnecessary delays in reaching the merits of an action. As stated in Federal Rule of Civil Procedure 1, the Court's role is to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1.

In response to a request for production of documents, the discovery rules require parties to produce relevant documents in their "possession, custody, or control." Fed.R.Civ.P. 26(b)(1) and 34(a)(1). "[A] party need not have actual possession of documents to be deemed in control of them." *In re Folding Carton Antittrust Litigation*, 76 F.R.D. 420, 423 (N.D. Ill. 1977.) A party may be deemed in control of a document if it has the legal right to obtain it from a third party upon demand. *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). "The relationship between the party and the person or entity having actual possession of the document is central in each case. . . . This position of control is usually the result of statute, affiliation or employment." *Estate of Young Through Young v. Holmes,* 134 F.R.D. 291, 294 (D. Nev. 1991).

Without more, it is unclear why defendant, by virtue of its relationship with customers, including Sears, Home Depot, and J.C. Penney, would not have the legal right to obtain and produce copies of relevant manifests. If defendant does not have the legal right to obtain and produce copies of relevant manifests, plaintiff is entitled to know why. Accordingly, the Court finds that plaintiff is entitled to an order compelling defendant to either obtain and produce relevant customer manifests or provide plaintiff with a detailed, explanatory declaration signed under penalty of perjury by defendant's most knowledgeable representative. The declaration must provide a complete explanation as to why responsive customer manifests cannot be obtained from customers and produced and must also outline all steps taken to make this determination.

***Request No. 4*** seeks "[a]ny and all Load Out/Pay Reports for the Drivers." [Doc. No. 275, at p. 9.] Defendant represents that it has "made diligent efforts" but has been unable to locate these documents. [Doc. No. 275, at pp. 9-10; Doc. No. 275-8, at p. 4.] Defendant has not provided a satisfactory reason for its failure to produce these relevant

documents. Defendant has only represented that its efforts to locate these documents included contacting attorneys "who are uninvolved in this matter, but might have access to legacy Affinity documents as a result of their involvement in the transactions associated with the eventual acquisition of Affinity. . . ." [Doc. No. 275, p. 10.] Plaintiff is understandably concerned that relevant documents may have been destroyed despite defendant's duty of preservation.

Under the circumstances presented, plaintiff is entitled to an order compelling defendant to produce all documents responsive to Request No. 4 for the relevant time period. To the extent these documents cannot be located, the Court finds that plaintiff is entitled to a detailed explanation. Accordingly, to the extent the requested documents cannot be located, the Court will also order defendant to provide plaintiff with a detailed declaration signed under penalty of perjury by Affinity's most knowledgeable representative. The declaration must provide a complete explanation as to why responsive Load Out/Pay Reports for the time period in question cannot be located and must also outline all steps taken to make this determination.

### *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED THAT:

(1)   ***No later than March 4, 2016***, the parties shall submit a Joint Motion and proposed Stipulated Protective Order governing the exchange of confidential documents and information between the parties which specifically and sufficiently protects the privacy of any non-party information that may be produced as a result of this Order.

(2)   ***No later than March 25, 2016***, defendant shall produce full and complete responses to Document Request Nos. 1, 2, and 4 subject to a stipulated Protective Order that specifically and sufficiently protects the privacy of any non-party[1] information that may be produced as a result of this Order. To the extent any documents or information

---

[1]   "Non-party" refers to any individual or entity that is not included in the class defined by the District Court's Order of February 1, 2016. [Doc. No. 289.]

1 cannot be located or obtained and produced by defendant, defendant shall provide
2 plaintiff with a detailed declaration signed under the penalty of perjury by Affinity's most
3 knowledgeable representative.  The declaration must provide a complete explanation as
4 to why responsive documents cannot be located and produced and outline all steps taken
5 to make any such determination.

6    IT IS SO ORDERED.

7 Dated: February 19, 2016
                22

Hon. Karen S. Crawford
United States Magistrate Judge