UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO RUIZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>XPO LAST MILE, INC., formerly AFFINITY LOGISTICS CORPORATION,<br><br>Defendant. | Case No.: 5cv2125 JLS (KSC)<br><br>**ORDER GRANTING (1) *EX PARTE* MOTION TO FILE SUR-REPLY AND (2) MODIFIED APPLICATION FOR ATTORNEYS' FEES AND COSTS**<br><br>(ECF Nos. 328, 352) |

Presently before the Court is Plaintiffs' Application for Attorneys' Fees and Costs ("Fee Appl."), (ECF No. 328), Defendant's Response in Opposition to Plaintiff's Application for Attorney Fees and Costs ("Opp'n"), (ECF No. 342), and Plaintiffs' Reply in Support of Application for Attorneys' Fees ("Reply"), (ECF No. 347). Defendant has also submitted an *Ex-Parte* Motion to File Sur-Reply in Opposition to Plaintiff's Motion for Fees and Costs, ("Sur-Reply Mot."). (ECF No. 352.) The Court vacated the scheduled hearing and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the Parties' arguments and the law, the Court **GRANTS** Defendant's Sur-Reply Mot. and **GRANTS**, after modification, Plaintiffs' Fee Application.

/ / /

## BACKGROUND

In August of 2015, the parties submitted to Magistrate Judge Karen S. Crawford a Joint Motion for Determination of Discovery Dispute. (ECF No. 275.) In the Joint Motion, Plaintiffs sought many specific documents Defendants' had previously failed to produce. (Order Granting in Part and Den. in Part Pls.' Mot. for Sanctions ("Sanctions Order") 2, ECF No. 321.) Ultimately, Judge Crawford ruled in Plaintiffs' favor on all requests. (Order re Joint Mot. for Determination of Disc. Dispute 4–10, ECF No. 292.)

After Judge Crawford's Order, Defendant produced more than 75,000 pages of documents, barely any of which responded to Plaintiffs' request. (Sanctions Order 2–3.) Defendant, in part, explained the deficiency was due to lack of access to certain documents and other documents having potentially been "inadvertently disposed of some time during the past decade . . . ." (*Id.* 3.) Judge Crawford then held a status conference regarding the deficient discovery. (ECF No. 300.) Plaintiffs argued that Defendant had not complied with the Order Compelling Discovery; Defendant asserted compliance. (Sanctions Order 3.) Judge Crawford "invited Plaintiffs to make a motion under Rule 37 if they believed it was appropriate." (*Id.*)

Several weeks later, Plaintiffs filed a Motion for Sanctions, (ECF No. 301), which the Court granted nearly in its entirety, (*see generally* Sanctions Order). Specifically, the Sanctions Motion requested relief in the form of:

(1) precluding Defendant from using or relying upon Settlement Statements, pay summaries, ADP Master Control Reports or documents from Paychex, Inc. to dispute the expense reimbursement estimates developed by Plaintiffs;
(2) precluding Defendant from using or relying upon Settlement Statements, pay summaries, ADP Master Control Reports or documents from Paychex, Inc. to support its defense of "enhanced compensation;"
(3) precluding Defendant from using or relying upon manifests or load out . . . / pay reports to dispute (a) the hours and mileage estimates developed by Plaintiffs and (b) the fuel expense estimates developed by Plaintiffs; and
(4) awarding Plaintiffs reasonable attorneys' fees and costs associated with the filing of this motion and the motion to compel.

1 (Sanctions Order 4.) The Court granted the requested relief in all aspects except as it pertained to the ADP Master Control Reports; i.e., Defendants are precluded from using or relying on all the above-cataloged documents except for ADP Master Control Reports. (*Id.* at 8.) The awarded relief also included reasonable attorney fees, (*id.*), the application for which, and documents in support of and in opposition to, are now presently before the Court.

## LEGAL STANDARD

To calculate an appropriate attorney fee award, a court begins by "multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The number of hours reasonably spent on litigation does not include those "that are excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Hensley*, 461 U.S. at 434). To determine the reasonable hourly rate, a court looks to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir.1997)). In this case, the relevant community is the Southern District of California because it is "the forum in which the district court sits." *Id.* "The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested." *McCown*, 565 F.3d at 1102 (citing *Hensley*, 461 U.S. at 433).

## ANALYSIS

### I. The Parties' Arguments

In the present case, Plaintiffs request a total award of $26,980, based on (1) Counsel Osborn's 5.3 hours of allegedly $600-an-hour-compensable time, and (2) Counsel Trust's 59.5 hours of allegedly $400-an-hour-compensable time. (Fee Appl. 4.) Plaintiffs attached to their Fee Application all relevant time-sheet entries, including fields indicating a description of each particular piece of work done along with corresponding date, attorney, time, rate, and amount entries. (Osborn Decl. Ex. A, ECF No. 328-2.) Plaintiffs only initial

support for the reasonableness of the $600 and $400 hourly rates was a statement by Counsel Osborn that "[t]he hourly rates set forth in Exhibit A are consistent with those customarily charged by litigation firms performing similar work in the area." (Osborn Decl. ¶ 4, ECF No. 328-1.)

Defendant responded that Plaintiffs' "bare allegations regarding the rate charged as well as . . . the excessive hours he claims were expended on these two motions warrant a reduction in the fee amount requested." (Opp'n 1.) In particular, regarding the amount of hours reasonably expended, Defendant claims that the following deductions should be made:

(1) At least 2.6 hours corresponding to tasks more appropriately classified as "administrative" work; and

(2) 10.0 hours of document review that "would have to have been completed regardless of whether Plaintiff filed" the subsequent Motions here at issue;

(*Id.* at 4–6.) The alleged administrative work comprises: (1) 2.0 hours for editing a Joint Motion and Declaration, which Defendant argues "is excessive" given surrounding time entries, and (2) 0.6 hours for "tasks [that] could have been completed by administrative staff . . . ." (*Id.* at 4–5.) The allegedly duplicative review concerns (1) 7.0 hours "in connection with the review of 'discovery documents' " that Plaintiffs would have had to review even had they not filed the Motions here at issue; and (2) 3.0 hours out of a 6-hour time entry because those three hours dealt with "review of 'discovery documents' " that Plaintiffs would have had to review even had they not filed the Motions here at issue. (*Id.* at 5–6.)

Defendant also notes Plaintiffs' unsupported hourly rate determinations, and argues that $400 and $275 rates are more appropriate given both that another Court in this District used these exact rates, *Blair v. CBE Grp., Inc.*, No. 13CV134-MMA WVG, 2014 WL 4658731 (S.D. Cal. Sept. 17, 2014), and that here the Fee Application is based on "a simple discovery dispute." (Opp'n 6–8). Finally, Defendants additionally argue that the overall

fee calculation should be reduced "by 33% to account for Plaintiff[s'] partial success on the Motion for Sanctions." (*Id.* at 9–10.)

Plaintiffs respond specifically to each of Defendant's hours-expended challenges, asserting that (1) 13.9 hours to address "multiple (deficient) document productions, thousands of pages of documents and a discovery dispute that spanned almost a year" is in no way excessive and should not be reduced by two hours; (2) the 0.5 hour entry for work was not "administrative" but rather entailed "substantive edits"; (3) Plaintiffs have no objection to shifting to a paralegal rate the 0.1 hour calling the Court, despite the fact that "it is counsel's practice to have lawyers communicate with the Court"; and (4) the 10.0 hours spent reviewing documents would not have been completed in the absence of the underlying motions because Plaintiffs had to carefully compare for compliance the latest production with past productions, make sure that the "thousands of pages of documents [Defendant produced] for non-class members" were in fact non-responsive, and create a "detailed index of Defendant's March 2016 production" in "order to effectively address the discovery dispute with the Court." (Reply 5.) Plaintiffs also provide case citations, a copy of the Laffey Matrix (a District-of-Columbia-based attorney-fee data table), and additional information regarding Counsel Osborn's and Counsel Trust's experience and qualifications in support of the reasonableness of Counsels' rates. (*Id.* at 5–8.) Finally, Plaintiffs also disagree with Defendant's percentage-reduction approach, noting that "the Court, in very large part, granted Plaintiffs' requests for relief" in the underlying Sanctions Motion. (*Id.* at 8–10 (emphasis in original).)

Given that Plaintiffs only addressed the reasonableness of their hourly rates for the first time in their Reply, Defendant moved *ex parte* to file a sur-reply and attached its proposed sur-reply ("Sur-Reply") to the Motion. (ECF No. 352.) Because Defendant should have an opportunity to oppose Plaintiffs' reasonableness contentions, the Court **GRANTS** Defendant's Sur-Reply Motion. The substance of the Sur-Reply argues that (1) the Laffey Matrix is not an appropriate gauge of the reasonableness of an attorney's hourly rate in our locality, and (2) Plaintiffs' supplied declarations from "other lawyers . . .

submitted in three other cases to support the 'reasonableness' of his requested rates" do not meet Plaintiffs' burden to demonstrate the "rates he seeks are consistent with those in the community 'for similar work.'" (Sur-Reply 2–3 (several emphases removed, one maintained).)

The Court addresses these arguments in turn, turning first to the disputed individual time entries, next addressing the reasonableness of Plaintiffs' Counsels' proposed hourly rates, and finally discussing Plaintiffs' Counsels' success on the merits of the Sanctions Motion.

## II. Individual Time Entries

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

In the present case, the Court is not inclined to depart from any of Plaintiffs' hourly calculations other than the 0.1-hour entry spent calling the Court. The underlying dispute involved extensive discovery misconduct, including Defendant allegedly "inadvertently" losing or destroying many documents that were required to be preserved. (Sanctions Order 5–7.) The Court will not subtract two hours from drafting a Joint Motion and Declaration when both the substance of the underlying misconduct was so severe and far-reaching and Plaintiffs, in good faith, argue the two hours were "necessary to obtain the desired result . . . ." (Opp'n 3.) Nor will the Court subtract ten hours for document review. Although Defendant argues that such review would have occurred as a matter of course regardless of any discovery dispute, such an argument misses the whole substance of the dispute. It was because of Defendant's discovery misconduct, and Defendant's deficient substitute discovery—which included many documents related to no class member in this case—that Plaintiffs had to expend extra resources in untangling the mess Defendant created. Finally, Plaintiffs have also in good faith argued that the 0.5-hour entry for "editing, formatting and transmitting the July 15, 2015 follow-up letter" involved "substantive edits[,]" and

therefore "that time should certainly be included in Plaintiffs' award." (Opp'n 4.) Again, given the gravity of the dispute and misconduct here at issue, the Court declines to second guess a thirty-minute time entry Plaintiffs have sufficiently explained.

The only aspect of Defendant's argument to which Plaintiffs do not object is the 0.1-hour entry being reduced from an attorney rate to a paralegal rate of $125 per hour. Accordingly, the Court will adjust Plaintiffs' final award downward by this measure.

## III. The Reasonableness of Counsels' Hourly Rates

The reasonableness of a proposed hourly rate "should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City & Cty. of S.F.*, 976 F.2d 1536, 1545 (9th Cir. 1992), *opinion vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). The Ninth Circuit has endorsed several factors a court may consider in making such a determination, including:

> the novelty and difficulty of the issues involved in a case, the skill required to litigate those issues, the preclusion of other employment, the customary fee, relevant time constraints, the amount at stake and the results obtained, the experience, reputation, and ability of the attorneys, the nature and length of their professional relationship with the client, the "undesirability" of a case, and awards in similar suits.

*Id.* at 1546. "[T]he fee applicant has the burden of producing 'satisfactory evidence' that the rates he requests meet these standards." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013) (quoting *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005)). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

In the present case, Plaintiffs cite in and attach to their Reply several cases where Courts approved rates in excess of those Plaintiffs currently request, (Reply 6–8);

Defendant cites a different case where the Court diminished rate requests similar to those of Plaintiffs in this case, (Opp'n 7–8), and distinguish Plaintiffs' cited cases, (Reply 2–3).

That different Courts reach different outcomes in the context of this discretionary paradigm is unsurprising, if not terribly helpful. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). However, Defendant here is correct that Plaintiffs' cited cases are distinguishable in meaningful ways: one was unopposed as to the reasonableness of the hourly rate, (*Dilts v. Penske Logistics, LLC*, No. 08-CV-318-CAB-BLM, 2016 WL 4530816, at *5 (S.D. Cal. Mar. 11, 2016)), one was within the context of a class action settlement and was not a similar wage-and-hour case, (*see generally* Reply Ex. E, ECF No. 347-5), and one—again within the context of a class action settlement—merely found "that the hourly rates charged by class counsel . . . are within the prevailing range of rates charged by attorneys providing similar services in class action, wage-and-hour cases in California" without supplying any reasoning for the finding, (*id.*, ECF No. 347-5 at 47). Furthermore, all of Plaintiffs' supporting declarations are from the *Penske* case, which, as previously mentioned, was unopposed regarding the reasonableness of Counsels' hourly rate. (*See* Reply Exs. C, D, ECF Nos. 347-3 at 1–30, 50–54; 347-4.)[1]

Given the foregoing, Defendants are correct that Plaintiffs have not met their burden of showing that their requested rates are reasonable in light of customary rates in the community <u>for similar work</u>. And the Court agrees with Defendants that a downward departure is appropriate, given the balance of the other factors guiding its discretion, *supra*

---

[1] Additionally, the Court does not consider the Laffey Matrix. As Defendant notes, Courts in our Circuit do not find the Laffey Matrix persuasive regarding the prevailing rates for our community for similar work. *E.g.*, *Perez v. Cozen & O'Connor Grp. Long Term Disability Coverage*, No. 05CV0440-DMS AJB, 2007 WL 2142292, at *2 (S.D. Cal. Mar. 27, 2007); *see also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010).

at 7. Specifically, the difficulties Plaintiffs' encountered underlying the fee award here stemmed almost exclusively from the sheer volume of data the Defendant supplied and the amount of time it took for Plaintiffs to ferret out the truth of what happened to the documents they originally requested. While Defendant's conduct was inappropriate, it does not necessarily follow that it was difficult for Plaintiffs to detect or brief. And although Plaintiffs obtained favorable relief, the underlying discovery dispute—despite having large-scale ramifications for this twelve-year-old case—did not preclude Plaintiffs' Counsel from other employment nor was it achieved under substantial time constraints.

Accordingly, the Court finds it appropriate to deduct $100 from Counsel Osborn's rate and $75 from Counsel Trust's rates. This results in a $500 hourly rate for Counsel Osborn and a $325 hourly rate for Counsel Trust—almost precisely the midpoint between Plaintiffs' request and Defendant's counter-request.

**IV.     Counsels' Success on the Merits of the Sanctions Motion**

Defendant is correct that generally "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). However, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.*

In the present case, Plaintiffs prevailed on their Sanctions Motion in all aspects except relief regarding one particular category of document. And the substance of the Sanctions Motion would likely have been nearly identical even had Plaintiffs not requested the specific relief the Court denied; i.e., the Motion addressed Defendant's deficient production generally in order to explain the need for several types of preclusion specifically. The Court here is satisfied that Plaintiffs "won substantial relief" through their Sanctions Motion, and therefore declines to reduce the corresponding attorney fee award due to the one aspect of requested relief the Court denied.

///

## CONCLUSION

Given the foregoing, the Court **GRANTS** Plaintiffs' Fee Application with the following modifications: (1) 0.1 hour of time shall be billed at a $125-per-hour rate, and (2) Counsel Osborn's time shall be billed at $500 an hour and Counsel Trust's time shall be billed at $325 an hour. This results in the following fee breakdown:

| ATTORNEY NAME | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| Daniel A. Osborn, Esq. | 5.3 | $500 | $2,650.00 |
| Lindsay M. Trust, Esq. | 59.4 | $325 | $19,305.00 |
| Lindsay M. Trust, Esq. | 0.1 | $125 | $12.50 |

Accordingly, Plaintiffs' Counsel are **AWARDED** $21,967.50 in attorney fees.

**IT IS SO ORDERED.**

Dated: April 20, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge