# EXHIBIT A

# SETTLEMENT AGREEMENT AND

# RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Agreement") is entered into by plaintiff, FERNANDO RUIZ (the "Class Representative") individually and on behalf of the Settlement Class, as defined below, and Defendant, XPO Last Mile, Inc.  This Agreement is subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and is made for the sole purpose of attempting to consummate settlement of this Action on a classwide basis subject to the following terms and conditions.  As detailed below, in the event the Court does not enter an order granting final approval of the Settlement for any reason, this Agreement shall be void and shall be of no force or effect.

## I.   **DEFINITIONS**

1.      XPO.  "XPO" shall mean Defendant XPO Last Mile, Inc., formerly known as Affinity Logistics Corporation.

2.      Action.  "Action" shall mean the civil action filed on May 17, 2005 by Fernando Ruiz against Defendant XPO in the United States District Court for the Northern District of California under Case No.  3:05-cv-02125-JLS-KSC.

3.      Carrier.  "Carrier" shall mean any person who signed an Independent Truckman's Agreement either in his or her individual capacity or through a business entity and themselves performed California-based delivery services for Affinity Logistics Corporation between May 18, 2001 and June 30, 2008.

4.      Claims.  "Claims" shall mean the claims asserted in the Action, including any claim arising out of or related to those Claims.

5.      Class Counsel.  "Class Counsel" shall mean Osborn Law, P.C. and the Law Offices of Elic Anbar.

6.      Class Counsel Fees and Expenses.  "Class Counsel Fees and Expenses" shall mean Class Counsel's attorney fees and expenses as set forth in Article III, Section 4 (Settlement Consideration – Class Counsel Fees and Expenses).

7.      Class Notice.  "Class Notice" shall mean the Notice of Proposed Class Action Settlement, as set forth in the form of Exhibit A attached hereto, or as otherwise approved by the Court, which is to be mailed to Settlement Class Members.

8.      Class Representative.  "Class Representative" shall mean Plaintiff Fernando Ruiz.

9.      Class Period.  "Class Period" shall mean the period of time from May 18, 2001 through June 30, 2008.

10.     Complaint.  "Complaint" shall mean the Complaint filed in the United States District Court for the Northern District of California on May 17, 2005 in this Action.

11.     Court.  "Court" shall mean the United States District Court for the Southern District of California.

12.     Contract Week.  "Contract Week" shall mean each week that a Carrier provided delivery services for Affinity Logistics Corporation pursuant to the Carrier's Independent Truckman's Agreement, during the Class Period, between the day a Carrier entered into an Independent Truckman's Agreement and the day the Independent Truckman's Agreement was terminated or the end of the Class Period, whichever comes first.

13.     Defendant.  "Defendant" shall mean XPO Last Mile, Inc., formerly known as Affinity Logistics Corporation.

14.     Defendant Releasees.  "Defendant Releasees" shall mean Defendant, Defense Counsel, and Defendant's present and former parent companies, subsidiaries, divisions, related or affiliated companies, successors, predecessors, related companies, and joint ventures, and each of their present and former owners, shareholders, officers, directors, employees, consultants, agents, attorneys, insurers, accountants, auditors, advisors, representatives, pension and welfare benefit plans, plan fiduciaries, administrators, trustees, general and limited partners, predecessors, successors and assigns, any individual or entity which could be jointly liable on behalf of the forgoing, and all other persons acting under the supervision, direction, control or on behalf of any of the foregoing.

15.     Defense Counsel.  "Defense Counsel" shall mean Jackson Lewis, P.C.

16.     Claims Administrator.  "Claims Administrator" shall mean Epiq Systems, Inc.

17.     Effective Date.  "Effective Date" shall be the date when all of the following events have occurred: (a) this Agreement has been executed by all Parties and by Class Counsel and one or more Defense Counsel; (b) the Court has given preliminary approval to the Agreement; (c) Class Notice has been sent as provided in this Agreement; (d) the Court has held a final approval hearing and entered a final order and judgment approving this Settlement; and (e) the later of the following events: the expiration of the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or the dismissal of any appeal, writ, or other appellate proceeding opposing the Settlement with no right to pursue further remedies or relief; or any appeal, writ, or the issuance of such other final appellate order upholding the Court's final order with no right to pursue further remedies or relief.

18.     Final Approval Date.  "Final Approval Date" shall mean the date upon which the Court enters an order finally approving the fairness, reasonableness and adequacy of the Settlement.

19.     Individual Settlement Amounts.  "Individual Settlement Amounts" shall mean the amount which is ultimately distributed to each Class Claimant.

20.     Net Settlement Amount.  "Net Settlement Amount" shall mean the Settlement Class Fund less Class Counsel Fees and Expenses, Claims Administrator Fees, and the Service Award.

21.     Parties.  "Parties" shall mean the Class Representative and Defendant.

22.     Preliminary Approval Date.  "Preliminary Approval Date" shall mean the date upon which the Court enters an order preliminarily approving this Settlement.

23.     Released Claims.  "Released Claims" shall mean any and all claims, demands, rights, liabilities, and/or causes of action of any nature and description whatsoever, whether known or unknown, at law or in equity, whether concealed or hidden, whether under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law, which Settlement Class Members asserted in the Action or could have asserted against the Defendant Releasees including, but not limited to, claims arising out of, derived from, or related to the facts and circumstances alleged in, or that could have been alleged in, the Action.  Released Claims include, without limitation, all rights and claims under California wage payment laws and wage and hour related claims, demands, rights, liabilities, and/or causes of action of any nature and description whatsoever for wages, benefits, taxes, compensation, damages, costs, penalties, liquidated damages, treble damages, punitive damages, interest, attorney fees, litigation costs, restitution, equitable relief, or other relief, and any claims of alleged unjust and/or improper (1) classification as an independent contractor and/or non-employee exempt from federal and state minimum wage and/or overtime laws, or any other alleged misclassification under federal or state laws or any alleged misclassification related to other employment-related claims; (2) deductions from compensation and/or wages; (3) failure to pay minimum wages; (4) failure to provide proper pay stubs or other records related to hours worked, wages earned, and/or payroll deductions; (5) failure to pay, indemnify, and/or reimburse for work-related expenses; (6) failure to pay all wages when due; (7) failure to calculate and/or pay overtime compensation; (8) failure to keep and maintain any records required to be kept or maintained under federal and/or state wage and hour laws; (9) retaliation; and/or (10) enrichment in any manner of Defendant by any conduct alleged or that could have been alleged in this Action.  The releases in this paragraph include all employment-related federal and state claims, except worker's compensation, but including claims under the California law, the federal Fair Labor Standards Act ("FLSA"), and common law claims, at any time during the Class Period.

24.     Second Distribution Amount.  "Second Distribution Amount" shall refer to amounts of checks distributed to Class Claimants, but which are not cashed within the time established below.

25.     Service Award.  "Service Award" shall mean any additional monetary payment provided to the Class Representative for his efforts and risks on behalf of the Settlement Class in this Action as set forth below.

26.     Settlement.  "Settlement" shall mean the settlement between the Parties, which is memorialized in this Settlement Agreement and Release of Claims, including any attached exhibits.

27.     Settlement Class.  "Settlement Class" shall mean the Class Representative and Carriers. The number of unique Carriers from May 18, 2001 to June 30, 2008 is approximately 265, and in any event will not exceed 270.  If any member of the Settlement Class provided delivery services in the name of a business entity, the business entity shall be considered one and the same as the individual person for all purposes of this Settlement.   Consistent with the Complaint's class definition, the Settlement Class does not include individuals who provided driver delivery services for a Carrier and did not execute an Independent Truckman's Agreement.

28.     Settlement Class Fund.  "Settlement Class Fund" shall mean the gross amount of Thirteen Million Nine Hundred Thousand and 00/100 ($13,900,000.00) dollars, which will be paid as described below, and which represents full payment for the Released Claims, including the Class Counsel Fees and Expenses, Service Award, and aggregate Individual Settlement Amounts.

29.     Settlement Class Member.  "Settlement Class Member" shall mean any person who is a member of the Settlement Class or if such person is incompetent or deceased, the person's legal guardian, executor, heir, or successor-in-interest.

30.     Settlement Class Member Information.  "Settlement Class Member Information" shall mean for each Settlement Class Member, (1) his or her first and last name; (2) dates of service, specifying the number of weeks worked by each Class Member; and (3) social security numbers.

## II.     **FACTUAL BACKGROUND**

1.     **Procedural History**.  This case has a complicated procedural history involving two separate trials and two appeals to the United States Court of Appeals for the Ninth Circuit.

Plaintiff Fernando Ruiz initiated this lawsuit on **May 17, 2005** by filing his Complaint in the United States District Court for the Northern District of California, alleging that Defendant violated various state and federal wage and hour laws.  On **July 7, 2005**, Defendant filed an Answer.  This case was transferred to the Southern District of California on **December 8, 2005**.

A bench trial was held in **December 2009** before the Hon. Janis Sammartino to determine whether the class members were properly classified as independent contractors.  Judge Sammartino ruled that the drivers were independent contractors under Georgia law.  Following an appeal by Plaintiff Ruiz, the Ninth Circuit vacated the district court's judgment on **March 28, 2012** and remanded the case for further proceedings in accordance with California law, rather than Georgia law.

On remand, Judge Sammartino once again found in favor of Defendant on **August 27, 2012**, and held that the class members were independent contractors under California law.

Plaintiff Ruiz appealed to the Ninth Circuit, which overturned Judge Sammartino's decision on **June 16, 2014** and adjudged the class members to be employees under California law.

On **February 21, 2017**, Judge Sammartino granted Plaintiff Ruiz's Motion for Summary Judgment in part, holding that XPO violated California Labor Code Sections 226.7, 512 and 2802, as well as IWC Wage Order 9-2001, Section 11 (collectively, expense reimbursement and meal/rest break provisions).  By that time, Plaintiff's additional allegations against XPO as pleaded in the Complaint, including FLSA, ERISA, and Unfair Competition Law violations, had been disposed of.

The Parties attended mediation in this matter on **May 19, 2017**, before mediator Carole Katz, a nationally recognized class action wage and hour expert.  The case did not resolve at that time. Plaintiff Ruiz thereafter abandoned his rest break claim.

A bench trial went forward on the issue of class-wide damages for expense reimbursements and meal breaks on **June 12, 2017**.  The parties reached a settlement on the second day of trial.

2. **Class Representative's Claims**.   The Action alleges Defendant misclassified the Settlement Class Members as independent contractors and asserts claims for alleged violations of (1) Fair Labor Standards Act; (2) California Wage Laws; (3) Failure to Pay Wages; (4) California Labor Code; (5) Unfair Business Practices; and (6) ERISA.  The Class Representative believes that he has meritorious claims based on these alleged violations of California law, and that class certification is appropriate because the requisites for class certification have been satisfied. Defendant has denied and continues to deny any liability to the Class Representative and the Settlement Class and has raised various defenses to the Claims.

3. **Discovery, Investigation, and Research**.  Class Counsel conducted an investigation into the facts during the prosecution of the Action.  This discovery and investigation has included, among other things (a) multiple meetings and conferences with the Class Representative; (b) inspection and analysis of documents produced by the Class Representative and Defendant; (c) deposing four of Defendant's managers, seven class members, and two experts (d) analysis of the legal positions taken by Defendant; (e) investigation into the viability of class treatment of the Claims; (f) extensive analysis of class-wide damages, including two expert reports; (g) research of the applicable law with respect to the Claims and potential defenses thereto; (h) serving and responding to discovery requests; (i) actively litigating the case for over twelve years with numerous motions and appeals; (j) participating in a full-day mediation and continuing to consult with the mediator in numerous follow-up discussions.

The Class Representative has vigorously prosecuted this case, and Defendant has vigorously contested it.  The Parties have engaged in sufficient investigation and discovery to assess the relative merits of the Claims and of Defendant's defenses to them.

4. **Allegations of the Class Representative and Benefit of Settlement**.  The factual investigation, discovery, and litigation conducted in this matter, which included extensive preparation for mediation, as well as discussions between Class Counsel and Defense Counsel, have been adequate to give the Class Representative and Class Counsel a sound understanding of the merits of their positions and to evaluate the worth of the Claims of the Settlement Class.  This Agreement was reached after arm's-length bargaining over a period of several months, culminating in an agreement between the Parties following the first day of the damages trial of this action.  The discovery conducted in this Action and the information exchanged by the Parties through discovery, mediation, and trial are sufficient to reliably assess the merits of the Parties' respective positions and to compromise the issues on a fair and equitable basis.

The Class Representative and Class Counsel believe that the allegations and contentions asserted in the Action have merit.  However, the Class Representative and Class Counsel recognize and acknowledge the expense and delay of continued lengthy proceedings necessary to prosecute the Action against Defendant through trial and through appeals.  Class Counsel has taken into account the uncertain outcome of the litigation, the risk of continued litigation in complex actions such as this, as well as the difficulties and delays inherent in such litigation, and the potential difficulty of demonstrating damages for the class. Class Counsel is mindful of the potential problems of proof under, and possible defenses to, the Claims alleged in the Action.

Class Counsel believes that this Agreement confers substantial benefits upon the Class Representative and the Settlement Class Members and that an independent review of this Agreement by the Court in the approval process will confirm this conclusion. Based on their own independent investigation and evaluation, Class Counsel has determined that the Agreement is in the best interests of the Class Representative and the Settlement Class Members.

5.      **Defendant's Denial of Wrongdoing and Liability**.  Defendant has denied and continues to deny each and all of the Claims and contentions alleged by the Class Representative in the Action.  Defendant has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged in the Action.  Defendant contends that it complied in good faith with California laws, properly classified the Class Representative and Settlement Class Members under applicable state and federal law, and has dealt legally and fairly with Class Representative and Settlement Class Members. Defendant further denies that, for any purpose other than settling this Action, these Claims are appropriate for class or representative treatment.  Nonetheless, Defendant has concluded that further proceedings in the Action would be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement in order to dispose of burdensome and protracted litigation and to permit the operation of Defendant's business without further expensive litigation and the distraction and diversion of its personnel with respect to matters at issue in the Action.  Defendant has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as the Action.  Defendant has, therefore, determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth in this Agreement.

6.      **Intent of Agreement**.  The Agreement set forth herein intends to achieve the following: (1) entry of an order approving the Agreement; (2) entry of judgment and dismissal with prejudice of the Action; and (3) discharge of Defendant Releasees from liability for any and all of the Released Claims.

## III.   SETTLEMENT CONSIDERATION

1.      **Settlement Class Fund**.  The Settlement Class Fund shall not exceed or be less than the aggregate sum of $13,900,000.00.   The Settlement Class Fund shall constitute adequate consideration for the Agreement and will be made in full and final settlement of: (a) the Released Claims, (b) the Class Counsel Fees and Expenses; (c) the Service Award; (d) the aggregate of all Individual Settlement Amounts; (e) the Claims Administrator Fees and Costs; and (f) any other obligation of Defendant under this Agreement.  Under no circumstances shall Defendant be required to pay more than the Settlement Class Fund for any reason whatsoever related to or under this Agreement.

2.      **Representation of Size of the Settlement Class**.  The agreement is entered into expressly based on Defendant's representation that, as of June 13, 2017, the number of unique Carriers from May 18, 2001 to June 30, 2008 is approximately 265, and in any event will not exceed 270.

3.      **Service Award for the Class Representative**.  The Class Representative may petition the Court to approve a Service Award.  Plaintiff Ruiz may petition the Court for a Service Award in

an amount not to exceed $100,000.00 for his efforts on behalf of the Settlement Class in this Action, including assisting in the investigation and consulting with Class Counsel.  The payment shall come out of the Settlement Class Fund.  Defendant shall not oppose any request by the Class Representative for a Service Award in such an amount.  Any Service Award approved by the Court shall be paid to the Class Representative from the Settlement Class Fund and shall be in addition to any distribution to which he may otherwise be entitled as a Settlement Class Member.  Such Service Award shall not be considered wages, and the administrator of the Settlement Class Fund shall issue the Class Representative a Form 1099 reflecting such payment.   The Class Representative shall be responsible for the payment of any and all taxes with respect to his Service Award and shall hold Defendant Releasees harmless from any and all liability with regard thereto.

4.       **Payment to Settlement Class Member**.  Each Settlement Class Member shall be eligible to receive payment of the Individual Settlement Amount, which is a share of the Net Settlement Amount based on the formula identified below.  Each Settlement Class Member, including the Class Representative, shall be responsible for the payment of any and all taxes with respect to his or her Individual Settlement Amount.  Defendant shall have no responsibility for deciding the validity of the Individual Settlement Amounts or any other payments made pursuant to this Settlement, shall not be liable under any circumstances for any errors in the decision of any claims, shall have no involvement in or responsibility for the determination or payment of taxes and required withholdings, if any, and shall have no liability for any errors made with respect to the calculation of any Individual Settlement Amounts.  Settlement Class Members represent and understand that they shall be solely responsible for any and all tax obligations associated with their respective Individual Settlement Amounts.  All Individual Settlement Amounts shall be deemed to be paid to Settlement Class Members solely in the year in which such payments are actually received by the Settlement Class Members.  It is expressly understood and agreed that the receipt of the Individual Settlement Amounts will not entitle any Settlement Class Member to additional compensation or benefits under any of Defendant's compensation or benefit plans or agreements in place during the period covered by the Settlement, nor will it entitle any Settlement Class Member to any increased retirement, 401(k) benefits or matching benefits, or deferred compensation benefits.  It is the intent of this Settlement that the Individual Settlement Amounts are the sole payments to be made to the Settlement Class Members, and that the Settlement Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Individual Settlement Amount (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).  On the back of each Individual Settlement Amount check the following language shall appear that will be the opt-in consent required by the FLSA and agreement that he/she has been paid in full for any and all FLSA and Connecticut State wage and hour claims he/she might have had against Defendant: "By endorsing this check, I am providing opt-in consent to release all FLSA claims covered by the Settlement in addition to the release of all claims covered by the Settlement."

5.       **Class Counsel Fees and Expenses**.  As part of the motion for final approval of the Settlement, Class Counsel may submit an application for an award of Class Counsel Fees and Expenses not to exceed $4,865,000.00 for Fees and $350,000.00 for Costs and Expenses.  An IRS

Form 1099 shall be issued for Class Counsel Fees, Costs, and Expenses. Defendant agrees not to object to any such fee, cost or expense application in this amount. As a condition of this Agreement, Class Counsel has agreed to pursue fees and expenses only in the manner reflected by this Section. Any Class Counsel Fees and Expenses awarded by the Court shall be paid from the Settlement Class Fund and shall not constitute payment to any Settlement Class Members. If Class Counsel' fees are reduced by the Court and Class Counsel Fees and Expenses is less than set forth above, the amount of the reduction ordered by the Court will be added to the Settlement Class Fund and shall not revert to XPO.

The Class Counsel Fees and Expenses approved by the Court shall encompass: (a) all work performed and costs and expenses incurred by, or at the direction of, any attorney purporting to represent the Settlement Class related to this Action; (b) all work to be performed and costs to be incurred in connection with approval of the Agreement; and (c) all work to be performed and costs and expenses, if any, incurred in connection with administering the Settlement through the Effective Date.

6.      **Class Administrator Fees and Costs**.   From the Settlement Class Fund, claim administrative fees and costs shall be payable to the Class Administrator, Epiq Systems, Inc., to effectuate the administration of the settlement not to exceed $50,000.00, with any applicable left over residual amount being included as part of the distribution of the Net Settlement Fund, described below. If, and to the extent that, the fees charged by the Claims Administrator are less than $50,000.00 the balance will be contributed to the Class Net Settlement Fund. The Claims Administrator fees shall be added to the IRS Form 1099 issued for Class Counsel Fees, Costs, and Expenses.

## IV.      SETTLEMENT FUNDING AND DISTRIBUTION

1.      **Claims Administrator**.  The Claims Administrator will make a distribution of the funds as described below. If, after that distribution any of the Net Settlement Funds remain unclaimed, and the Settlement Administrator has made all diligent efforts to locate any absent class members to whom those unclaimed funds are assigned, the Settlement Administrator will conduct a second calculation and second distribution to those Settlement Class Members who received and cashed their Individual Settlement Amount check..

2.      **Allocation of the Settlement Class Fund Amount**.  The Settlement Class Members are settling for the Settlement Class Fund amount of $13,900,000.00, which will be allocated as follows: (a) Class Counsel Fees and Expenses; (b) Service Award; (c) the aggregate of all Individual Settlement Amounts; and (d) the Claim Administrator Fees and Costs.

3.      **Payment by Defendant**.  Within 21 days after the Effective Date, Defendant will deposit $13,900,000.00 with the Claims Administrator to pay (i) the Class Counsel Fees and Expenses, (ii) Service Award; (iii) the Individual Settlement Amounts to be paid to Settlement Class Members; and (iv) the Claims Administrator Fees and Costs. In no event shall Defendant be required to pay more than the settlement amount of $13,900,000.00. The Claims Administrator shall place the Settlement Class Fund in a segregated, interest bearing trust account. The Parties agree, and Class

Counsel shall warrant, that the funds deposited in this account shall constitute a qualifying, designated settlement fund pursuant to Section 468B of the Internal Revenue Code.

4.     **Time for Payment of Class Counsel Fees and Expenses**.  Class Counsel is entitled to withdraw an amount not to exceed $4,865,000.00 for Class Counsel Fees and $350,000.00 for Class Counsel Expenses approved by the Court immediately upon Defendant depositing the Settlement Class Funds as directed by Class Counsel.

5.     **Time for Payment of Service Award to Class Representative**.  The Claims Administrator shall distribute to the Class Representative the Service Award not to exceed $100,000.00 approved by the Court no later than 14 days after the Defendant deposits the Settlement Class Funds as directed by Class Counsel.

6.     **Time for Payment of Individual Settlement Amounts**.  The remaining Settlement Funds will be distributed as follows:

a.     The $8,535,000.00 constituting the Net Settlement Fund shall be allocated to Settlement Class Members who personally provided California-based delivery services for Affinity Logistics Corporation from May 18, 2001 to June 30, 2008.

b.     Each Settlement Class Member shall receive a pro rata share of the Settlement Class Fund based on the formula described below.

c.     The Claims Administrator shall mail the Individual Settlement Amount to each Class Claimant, by first-class U.S. mail, to the last-known address no later than 14 days after the Defendant deposits the Settlement Class Funds as directed by Class Counsel.  Settlement Class Members.  In the event that any Settlement Class Member is deceased, payment shall be made payable to the estate of that Settlement Class Member and delivered to the Settlement Class Member's successor in interest as defined by Code Civ. Proc. § 377.11.

7.     **Calculation of Individual Settlement Amounts**.  Each Settlement Class Members shall receive a share of the Net Settlement Fund based on the following formula:

One hundred percent (100%) of the Class Settlement Net Fund will be allocated and distributed to members of the Settlement Class such that:

a.     approximately five percent (5%) of this portion shall be treated as wages determined for which an IRS Form W-2 shall be issued and divided among each member who will receive a percentage of the amount distributed which will be calculated using (a) the number of work weeks that each member of the Settlement Class provided driving services to Defendant between May 18, 2001 through June 30, 2008 as the numerator and (b) the total number of work weeks that all members of the Settlement Class provided driving services to Defendant from May 18, 2001 to June 30, 2008 as the denominator, and;

b.     approximately thirty-eight percent (38%) shall be treated as reimbursement of expenses determined and divided among each member who will receive a percentage of the amount distributed which will be calculated using (a) the number of work weeks that each member of the Settlement Class provided driving services to Defendant between May 18, 2001 through June 30,

2008 as the numerator and (b)  the total number of work weeks that all members of the Settlement Class provided driving services to Defendant from May 18, 2001 to June 30, 2008 as the denominator.

      c.     approximately fifty-seven percent (57%) shall be treated as interest for which an IRS Form 1099 shall be issued and divided among each member who will receive a percentage of the amount distributed which will be calculated using (a) the number of work weeks that each member of the Settlement Class provided driving services to Defendant between May 18, 2001 through June 30, 2008 as the numerator and (b) the total number of work weeks that all members of the Settlement Class provided driving services to Defendant from May 18, 2001 to June 30, 2008 as the denominator.

XPO shall have no responsibility for deciding the validity of the Individual Settlement Amounts or any other payments made pursuant to this Settlement, and shall not be liable under any circumstances for any errors in the decision of any claims, shall have no involvement in or responsibility for the determination or payment of taxes and required withholdings, if any, and shall have no liability for any errors made with respect to the calculation of any Individual Settlement Amount.  Settlement Class Members represent and understand that they shall be solely responsible for any and all tax obligations associated with their respective Individual Settlement Amounts.  All Individual Settlement Amounts shall be deemed to be paid to Settlement Class Members solely in the year in which such payments are actually received by the Settlement Class Members.

8.     **Non-Cashed Settlement Checks**.  Each Settlement Class Member must cash his or her Individual Settlement Amount check within 45 days after it is mailed to him or her.  If a check is returned to the Claims Administrator, Class Counsel will make all reasonable efforts to re-mail it to the Settlement Class Member at his or her correct address.  If any Settlement Class Member's Individual Settlement Amount check is not cashed within 45 days after it is mailed or re-mailed, whichever is later, the Claims Administrator will send the Settlement Class Member a letter informing him or her that, unless the check is cashed within 30 days of the date of the letter, it will expire and become non-negotiable and offering to replace the check if it was lost or misplaced, but not cashed.  If the check remains uncashed by the expiration of the 30-day period after this notice, the Claims Administrator will void the check.  In such event, the Settlement Class Member will nevertheless remain bound by the Settlement, including the release of the Released Claims.

9.     **Second Distribution**.  Within 150 days after the Claims Administrator mails the Individual Settlement Amount checks, the Claims Administrator shall distribute the amount of any uncashed checks or remaining funds to those Settlement Class Members who cashed their Individual Settlement Amount checks.  The remaining funds shall be allocated and distributed using the formula in paragraph 7.

10.     **Non-Reversionary Settlement**.  The entirety of the Settlement Class Fund will be utilized to pay the Settlement Class Members, the Class Representative, Class Counsel Fees and Expenses, and Class Administrator Fees and Costs  according to the terms of this Settlement.  The Parties

agree that no amount of the Settlement Class Fund will revert back to Defendant once paid pursuant to this Settlement.

11.   **Taxes**.   The Claims Fund is a common fund that will be administered as a Qualified Settlement Fund for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and that the "administrator" of the Claims Fund, within the meaning of Treas. Reg. § 1.468B-2(k), shall comply with all applicable requirements, which shall include, without limitation, (a) preparing a "Regulation Section 1.468B-3 Statement" pursuant to Treas. Reg. § 1.468B-3(e) on behalf of Plaintiff and Defendant and providing copies to Counsel for Plaintiff and Defendant for review and approval (which approval shall not be unreasonably withheld); and (b) preparing and timely filing on behalf of the Claims Fund (i) such income tax and other returns and statements as are required to comply with Treas. Reg. § 1.468B-2 and the other applicable provisions of the Internal Revenue Code of 1986, as amended (the "Code"), and (ii) all necessary state or local tax returns. In the event that any amounts to be distributed to the Settlement Class remain unpaid, that amount will be redistributed to the Settlement Class.

## V.   MOTIONS FOR COURT APPROVAL

1.   **Preliminary Approval**.   Class Counsel will submit this Agreement to the Court along with a Motion for Preliminary Approval of the Settlement the Parties have mutually agreed to, which shall include the proposed notice to be sent to Settlement Class Members.   Each party shall cooperate to present the Agreement to the Court for preliminary approval in a timely fashion.

2.   **Final Approval**.   Prior to the final approval hearing, Class Counsel will submit a Motion for Final Approval of the Settlement the Parties have mutually agreed upon.   At the hearing on the Motion for Final Approval of the Settlement, Class Representative and Defendant shall jointly request that the Court enter a final order, approving the Settlement as required by Federal Rule of Civil Procedure 23(e) and enter a final judgment of dismissal with prejudice of the Action consistent with the terms of the Settlement.   Class Counsel and Defense Counsel shall submit to the Court such pleadings and/or evidence as may be required for the Court's determination.

## VI.   CLAIMS PROCEDURE

1.   **Notice to Settlement Class Members**.   Twenty one (21) days following the Preliminary Approval Date, the Claims Administrator will send notice of the Settlement in the form attached hereto as Exhibit A to Settlement Class Members' last-known addresses.   The Claims Administrator will thereafter follow up promptly on undeliverable addresses and attempt to locate the Settlement Class Members' updated addresses through people-finder software and skip-trace searches through the United States Postal Service.   Additionally, the Claims Administrator may call the telephone numbers of Settlement Class Members to attempt to obtain updated addresses, as necessary, and Defendant will cooperate in providing such numbers to the extent such numbers are known by Defendant.   In no event, and under no circumstances, shall the Claims Administrator contact any Settlement Class Member regarding, in any way, the prospective representation or potential representation of any Settlement Class Member relating to any of the Released Claims, except as specifically provided herein.   Further, within 120 days after the mailing of the last Individual Settlement Amount check is mailed to a Settlement Class Member pursuant to the

second distribution, the Claims Administrator shall either destroy or return to Defense Counsel all Settlement Class Member Information received from Defendant, along with all information received by the Claims Administrator relating to the Settlement, including information relating to the Class Notice, except as required by law.

3.      **Objections**.  Settlement Class Members who wish to object to the Settlement must file written objections and serve copies on counsel for the parties within 45 days of the mailing of the notice of class settlement.   Class Counsel shall inform the Court of any timely filed objection, and shall provide a copy to the Court and Defense Counsel.  The Parties shall not solicit nor otherwise encourage, directly or indirectly, any objections to this Settlement.

## VII.   NULLIFICATION OF SETTLEMENT

1.      **Non-Approval of the Settlement**.  If (a) the Court should for any reason fail to approve this Agreement in the form agreed to by the Parties, or (b) the Court should for any reason fail to enter a judgment and dismissal with prejudice of the Action, or (c) the approval of the Agreement and judgment and dismissal is reversed, modified or declared or rendered void, then the Agreement shall be considered void, and neither the Agreement, nor any of the related negotiations or proceedings, shall be of any force or effect, and all parties to the Agreement shall stand in the same position, without prejudice, as if the Settlement had been neither entered into nor filed with the Court.  Notwithstanding the foregoing, the Parties may attempt in good faith to cure any perceived defects in the Agreement to facilitate approval.

2.      **Invalidation**.  Invalidation of any material portion of the Settlement shall invalidate the Settlement in its entirety, unless the Parties shall subsequently agree in writing that the remaining provisions of the Settlement are to remain in full force and effect.

3.      **Stay Upon Appeal**.  In the event of a timely appeal from the approval of the Settlement and judgment and dismissal, the judgment shall be stayed, and Defendant shall not be obligated to fund the Settlement Class Fund or take any other actions required by this Settlement until all appeal rights have been exhausted by operation of law.

## VIII.   RELEASES AND WAIVERS

1.      **Release of Claims by Settlement Class Members**.  All Settlement Class Members will fully, finally, and forever settle the Released Claims with prejudice.  Settlement Class Members forever agree that they, and each of them, shall not institute, nor accept any other relief from, any other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever, except where prohibited by law, against Defendant Releasees related to the Released Claims, excluding any state or federal wage and hour claims that are unrelated to this action and filed on or before August 10, 2017.

3.      **Release of Claims by Class Representative**.  The Class Representative, on behalf of himself, and any business entities through which he performed services on behalf of Defendant, and his heirs, executors, administrators, and representatives, shall and does hereby forever release, discharge and agree to hold harmless the Defendant Releasees from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions,

causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney fees and costs), known or unknown, at law or in equity, which he may now have or may have after the signing of this Agreement, against Defendant arising out of or in any way connected with his work for Defendant including, the Released Claims, claims that were asserted or could have been asserted in the Action, and any and all transactions, occurrences, or matters between the parties occurring prior to the Effective Date.  Without limiting the generality of the foregoing, this release shall include, but not be limited to, any and all claims under the (a) Americans With Disabilities Act, as amended; (b) Title VII of the Civil Rights Act of 1964, as amended; (c) the Civil Rights Act of 1991; (d) 42 U.S.C.  § 1981, as amended; (e) age discrimination claims under the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act; (f) the Fair Labor Standards Act, as amended; (g) the Equal Pay Act; (h) the Employee Retirement Income Security Act, as amended; (i) the Consolidated Omnibus Budget Reconciliation Act; (j) the Rehabilitation Act of 1973; (k) the Family and Medical Leave Act; (l) the Civil Rights Act of 1966; and (m) any and all other federal, state and local statutes, ordinances, regulations, rules and other laws, and any and all claims based on constitutional, statutory, common law or regulatory grounds as well as any other claims based on theories of wrongful or constructive discharge, breach of contract or implied contract, fraud, misrepresentation, promissory estoppel or intentional and/or negligent infliction of emotional distress, or damages under any other federal, state or local statutes, ordinances, regulations, rules or laws.  This release is for any and all relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation pay, bonuses, compensatory damages, tortious damages, liquidated damages, punitive damages, damages for pain and suffering, and attorney fees and costs, and the Class Representative hereby forever releases, discharges and agrees to hold harmless the Defendant Releasees from any and all claims for attorney fees and costs arising out of the matters released in this Settlement.

4.     **Release of Claims by Defendant**.  Upon the Effective Date, Defendant hereby releases and forever discharges the Class Representative from any and all manner of legal or equitable action or cause of action, suits, claims, liabilities, damages, restitution, interest, penalties, attorneys' fees, costs and expenses of any kind or nature whatsoever, known or unknown, which they now have, ever had, or shall later have against the Class Representative arising out of or relating to or in connection with any of the matters alleged or that could have been alleged in this Action including, without limitation, breach of contract and indemnification, arising out of this Action, and any damages or legal costs incurred by Defendant thereto or matters between the parties occurring prior to the Effective Date.

5.     **Waiver of California Civil Code Section 1542.**   The Class Representative specifically acknowledges that he is aware of and familiar with the provisions of California Civil Code § 1542, which provides as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have**

**materially affected his or her settlement with the debtor.**

The Class Representative, being aware of this section, hereby expressly waives and relinquishes all rights and benefits he may have under this section as well as any other statutes or common law principles of a similar effect.   The Class Representative may hereafter discover facts in addition to or different from those which he now knows or believes to be true, but he stipulates and agrees that, upon the Effective Date, he shall and hereby does fully, finally and forever settle and release any and all claims against Defendant, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity and without regard to the subsequent discovery or existence of such different or additional facts.

## IX.   <u>CONFIDENTIALITY</u>

1.     <u>**Confidentiality of Settlement Class Member Information**</u>.  Class Counsel agrees to (i) hold the Settlement Class Member Information in strictest confidence; (ii) not disclose or divulge the Settlement Class Member Information to any Settlement Class Member, including the Class Representative, or to any third party except as otherwise required in this Agreement; and (iii) use the Settlement Class Member Information exclusively for or to assist in administration of this Settlement and for no other purpose, including, but not limited to, fact-gathering, discovery, or communication with Settlement Class Members for any purpose other than administration of this Settlement.

2.     <u>**Non-Disclosure of Settlement Information**</u>.  Other than to effectuate this Settlement, Class Counsel and the Class Representative agree that they will not communicate with nor disclose in any way to anyone information regarding or relating to this Action, the Claims asserted therein, or this Agreement, including the amount of money paid pursuant to this Agreement and/or the amount of money Class Counsel, Class Representative, and/or any Settlement Class Member received as a result of this Agreement unless as otherwise required by law.

3.     <u>**Media or Press**</u>.  In no event shall Class Counsel or the Class Representative issue or cause to be issued any press release or communication, via any medium, to any media or media representative, and Class Counsel and the Class Representative shall not otherwise communicate to any media or media representative, information regarding this Action, the Claims asserted therein, this Agreement, or the amount of money paid pursuant to this Settlement and/or the amount of money Class Counsel, Class Representative, and/or any Settlement Class Member received as a result of this Agreement.

## X.   <u>DUTIES OF THE PARTIES</u>

1.     <u>**Mutual Full Cooperation**</u>.  The Parties agree to cooperate fully with one another to accomplish and implement the terms of this Agreement.  Such cooperation shall include, but not be limited to, execution of such other documents and the taking of such other actions as may reasonably be necessary to fulfill the terms of this Settlement.  The Parties shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by court order or otherwise, to effectuate this Settlement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Class Counsel, with the

cooperation of Defendant and Defense Counsel, shall take all necessary and reasonable steps to secure the Court's final approval of this Agreement.

2.      **Duty to Support and Defend the Settlement**.  The Parties agree to abide by all of the terms of the Settlement in good faith and to support the Settlement fully and to use their best efforts to defend this Settlement from any legal challenge, whether by appeal or collateral attack.

3.      **Duties Prior to Court Approval**.  Class Counsel shall promptly submit this Agreement to the Court for preliminary approval and determination by the Court as to its fairness, adequacy, and reasonableness.   Promptly upon execution of this Agreement, Class Counsel shall apply to the Court for the entry of a preliminary order scheduling a hearing on the question of whether the proposed Settlement should be approved as fair, reasonable, and adequate as to the Settlement Class Members, approving as to form and content the proposed Class Notice as agreed to by the Parties, and directing the mailing of the Class Notice to Settlement Class Members.  Defense Counsel shall not oppose the motion for preliminary approval or join in the motion, provided that after review, it does not oppose any of its terms.

4.      **CAFA Notice**.  If it has not done so by the date this agreement is executed, XPO will promptly issue notice of this Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

## XI.    **MISCELLANEOUS**

1.      **Signatory Authorization to Settle**.  The signatories to this Agreement hereby represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions of this Agreement, and that the Class Representative's signature also binds any business entity through which the Class Representative provided services for Defendant.

2.      **Different Facts**.  The Parties hereto, and each of them, acknowledge that, except for matters expressly represented herein, the facts in relation to the dispute and all claims released by the terms of this Agreement may turn out to be other than or different from the facts now known by each Party and/or its counsel, or believed by such Party or counsel to be true, and each Party therefore expressly assumes the risk of the existence of different or presently unknown facts, and agrees that this Agreement shall be in all respects effective and binding despite such difference.

3.      **No Prior Assignments**.  The Parties represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber, to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

4.      **Integration Clause**.  This Agreement contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior and contemporaneous agreements, understandings, representations, and statements, whether oral or written, and whether by a Party or such Party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

5.      **Construction**.  The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her, or its counsel participated in the drafting of this Agreement.

6.      **Modification**.  This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties, and approved by the Court.  This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

7.      **Non-Admission**.  Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed an admission by any person or party that any person or entity who contracted with, or provided any delivery services for, Defendant is an employee or was improperly classified as an independent contractor, or is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any of the Defendant Releasees.  Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.  This Agreement is a settlement document and shall be inadmissible in evidence in any proceeding.  The preceding sentence shall not apply to an action or proceeding to approve, interpret, or enforce this Agreement.

8.      **Non-Disparagement**.  Each Party agrees that from this time forward it will refrain from making any defamatory, derogatory, or disparaging statements about the other, or any person associated with or representing the other.  Each Party further agrees that from this time forward it will not make or repeat any allegation of illegal, immoral, unethical, or improper conduct about the other, unless ordered to do so by a court of competent jurisdiction or otherwise required by law.

9.      **Governing Law**.  This Agreement is entered into in accordance with the laws of the State of California and shall be governed by and interpreted in accordance with those laws, excluding any choice of law provisions.

10.     **Captions and Interpretations**.  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.  Each term of this Agreement is contractual and not merely a recital.

11.     **Court Jurisdiction Over Settlement**.  The Parties agree that any dispute regarding the interpretation of the terms of this Agreement shall be resolved by the Court.  The Parties further agree that, upon the Final Approval Date, this Agreement shall be binding and enforceable pursuant to applicable law.

12.     **Attorney Fees, Costs and Expenses**.  Except as otherwise specifically provided for herein, each party shall bear his or its own attorney fees, costs and expenses, taxable or otherwise, incurred by them in or arising out of the Action and shall not seek reimbursement thereof from any other party to this Agreement.

13.     **<u>Execution in Counterparts</u>**.   This Agreement may be executed in counterparts with signatures transmitted by facsimile or electronic mail.  When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

IN WITNESS WHEREOF, the Parties and their counsel have executed this Agreement on the date below their signatures or the signature of their representatives.  The date of the Agreement shall be the date of the latest signature.


_____

Ben Faino, Senior Vice President and General Counsel

on behalf of XPO Last Mile, Inc.

Dated: _____, 2017


_____

Fernando Ruiz

Dated: _____, 2017

**APPROVED AS TO FORM**

OSBORN LAW, P.C.


_____

Daniel A.  Osborn

Attorney for Plaintiff and the Settlement Class

Dated: _____, 2017


LAW OFFICE OF ELIC ANBAR, ESQ.


_____

Elic Anbar

Attorney for Plaintiff and the Settlement Class

Dated: _____, 2017


JACKSON LEWIS, P.C.


_____

Jeffrey Newhouse

Attorney for Defendant, XPO Last Mile, Inc.

Dated: _____, 2017

4836-0352-4683, v.  4